CHARLES I. SEIDLER, complainant-appellee,

*v.*

BRANFORD RESTAURANT, INCORPORATED, a corporation, defendant.

[Argued January 23d, 1925.   Decided March 16th, 1925.]

1. The general expenses of a receivership are payable out of the funds in a receiver's hands prior to the payment of a mortgage debt.

2. Where one holding a chattel mortgage on the goods of an insolvent corporation, bought in such goods at the receiver's sale for an amount less than the face of the mortgage, an order confirming such sale, and providing that he need not pay the receiver the whole of the purchase price, but only so much thereof as is necessary to liquidate the expenses of the receivership, is proper.

---

On appeal from the court of chancery, advised by Vice-Chancellor Church, whose opinion is reported in *97 N. J. Eq. 153.*

*Mr. Thomas P. Argyris (Mr. Joseph Fuerstman* and *Messrs. McCarter & English,* of counsel), for the appellant.

*Mr. Harry Green,* for A. M. Reynolds, receiver and respondent.

The opinion of the court was delivered by

LLOYD, J.

On July 3d, 1924, Charles I. Seidler, president of Branford Restaurant, Inc., a corporation incorporated under the laws of this state, filed a bill in the court of chancery praying the appointment of a receiver for the corporation. On its presentation an order to show cause why a receiver should not be appointed was allowed, and in the order, A. M. Reynolds was appointed temporary custodian-receiver, with power to manage, conduct and operate the business of the corporation, which, as the name implies, was that of conducting a restaurant. To this order the corporation consented. On the return of the order to show cause, on July 10th, 1924, Reynolds was made the permanent receiver, and he continued to conduct the business of the company until about the first of October following, when, it becoming apparent that the best interest of all parties were not conserved by its further continuence, and order to sell the assets of the corporation was made.

The appellant, Thomas P. Argyris, was the holder of a chattel mortgage for $10,000 on the personal property of the Branford company, and the receiver, apparently having some reason to question its validity, on July 12th, 1924, presented to the court his petition challenging the chattel mortgage, and praying the court to restrain its foreclosure. On July 15th, 1924, an order to show cause and with a restraint as prayed was made. On October 4th, 1924, an order was made, to which both the receiver and appellant consented, holding that the chattel mortgage was valid, and that the receiver sell the assets of the corporation "free and clear of the lien of the mortgage, the lien thereof to attach to the proceeds." The sale was effected on October 14th, 1924, and the appellant became the purchaser of the assets in bulk at the price of $9,000. Appellant, upon demand by the receiver, refused to make any payment on account of the purchase price. The court thereupon, on the 15th of October, 1924, made an

order confirming the sale and directing that the purchaser, the appellant, pay to the receiver the sum of $1,800 as allowance for the receiver and his counsel, $150 for appraiser's fees, that he pay or assume the rent for use and occupation of the premises occupied by the receiver during the receivership, and, finally, to pay the auctioneers for their services and expenses in conducting the sale. Under pressure of a rule for contempt, appellant finally paid the several sums under protest.

The appeal is from the order last recited, and presents the question of its legality and propriety. It must be premised that if the terms of sale had been complied with by the appellant the purchase price of the property would have been paid into court and distributed to the claimants on the fund in the order in which they should be entitled. By the terms of the order confirming the sale, appellant is relieved of the obligation to pay the whole of the purchase price, but is required to pay so much thereof as is necessary to liquidate the expenses of the receivership. To this he can have no just cause of complaint unless, as he contends, the expenses are not entitled to be given priority over the chattel mortgage he holds, and which exceeded the amount of the purchase price by $1,000.

The appellant urges on this appeal, however, that the expenses of the receivership may not be preferred in the distribution of the proceeds of the sale of the assets over encumbrances existing at the time of the appointment of the receiver, and particularly under the facts of this case. To this contention we cannot assent. On the general principles of equity themselves, such expenses may properly be given preference in distribution. In the nature of things the cost of administration and of just distribution, where the court has jurisdiction, must be placed ahead of the claims of creditors whether secured or unsecured, and so say the text writers. Pomeroy, in his book on *Equit. Rem. (2d ed)* § *1641,* says: "In general, expenses of the receivership are payable out of the fund in the receiver's hands prior to the payment of a mortgage debt. The reasons for such a rule are apparent.

The receiver represents the court and acts for the interest of all concerned." High, in his treatise on receivers (at *pp. 961, 962*), states the rule to be that "the costs of the appointment of the receiver are entitled to priority of payment out of the fund realized by him before all other demands, and the costs of receivership are properly given a preference over prior liens, although the appointment of the receiver was made without prejudice to prior liens." In our own court of chancery numerous cases are found where, in practice, this course has been pursued. In the case of *Attorney-General* v. *Linden Cemetery Association, 90 N. J. Eq. 407,* Vice-Chancellor Backes declares the rule to "theoretically settled that when a court of equity takes possession of property for the purpose of protecting and preserving it for the benefit of the parties interested, the costs of administration are entitled to priority of payment regardless of the nature of the liens and claims thereon of the litigants. This is so fundamental to the administration of justice and so generally recognized that citation of authority is unnecessary."

The rule is recognized and enforced in the eighty-fifth and eighty-sixth sections of our Corporation act (*Comp. Stat. p. 1652*), which read:

"Sec. 85. Before distribution of the assets of an insolvent corporation among the creditors or stockholders, the court of chancery shall allow a reasonable compensation to the receiver for his services and the costs and expenses of the administration of his trust and the costs of the proceedings in said court to be first paid out of said assets."

"Sec. 86. After payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionally to the amount of their respective debts."

In *Attorney-General* v. *Linden Cemetery Association, 90 N. J. Eq. 398,* the decree advised by Vice-Chancellor Backes was affirmed by the court of errors and appeals, and the court, in commenting on the statute, uses this language: "The well-settled rule, touching expenses of receivership of an insolvent corporation, is laid down by statute in section 85 of the Corporation act * * * and the next section clearly indicates that such allowance precedes all liens, special and general, upon the funds of the corporation."

The court below, therefore, in the present case, under the rule so clearly established, was clothed with ample power to compel the appellant to pay the expenses incident to the receivership. But, it is said, conceding the power, the court should not have imposed the expenses in the instant case on the appellant because the services in continuing the business were not of benefit to the holder of the mortgage. Assuming that the conduct of the business by the receiver may not, in this particular case, have operated beneficially (though in the opinion filed by the vice-chancellor the converse is stated to be the fact), it would be unfortunate indeed if the rule were that an officer of the court, acting under its direction, is dependent for his expenses and compensation on the success or failure in a commercial sense of his efforts in carrying out the order of the court. Receivers are but the arms of chancery, appointed to preserve the property of corporate and similar entities for the benefit of all parties in interest, and in cases of insolvency to administer the estate under the direction of the court. In theory of law, at least, a receiver has no part in his own selection, but stands as the representative of the court impartially between the parties. To hold that one thus chosen and thus serving should incur the expenses and perform the duties of the receivership at the risk of these expenses and services being beneficial or otherwise to the estate or to any of the parties in interest would be contrary to the whole theory of his office, deprive the courts of the services in many cases of competent administrators, and be subversive of the administration of this important branch of equity jurisdiction.

The appellant is not aggrieved by the action of the court below in imposing the expenses of the receivership on him, and the order is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 12.

*For reversal*—None.