JOHN J. FOSTER et al., complainants,

*v.*

BAY FRONT LAND COMPANY, defendant-respondent; EZEKIEL
   V. CORSON, AMOS CORSON, HIRAM S. MOWRER and
   MABEL G. CLARK, executrix, appellants.

[Submitted October term, 1931.  Decided February 1st, 1932.]

*Mr. W. Elmer Brown, Jr.,* and *Messrs. Babcock & Champion,* for the appellants.

*Mr. Emerson L. Richards,* for the respondents.

The opinion of the court was delivered by

CAMPBELL, J.

These appeals bring up for review an order dated December 15th, 1930, adjudging and decreeing that a lien be impressed upon the lands of the respondent for receiver's fees and costs including fees of his counsel, all of which to be subsequently fixed and that such lien be prior to that of mortgages upon such lands held by the appellants.

The situation seems to be that the Bay Front Land Company, a corporation of this state, purchased lands of the respective appellants, giving to each a purchase-money mortgage for a part, at least, of the consideration. Such mortgages were as follows: Ezekiel V. Corson, $50,000; Hiram S. Mowrer, $40,000; Amos Corson, $42,000; Arwilda Clark, $35,000. Arwilda Clark died subsequently and Mabel G. Clark, qualified as the executrix under her last will and testament.

All of these mortgages had provisions for the leasing of the mortgaged lands, from time to time, as sales thereof were made by the Bay Front Land Company. It appears that such company received from sales some $207,000; that it conducted its business principally by selling lots upon contract under which the consideration was paid in installments, and when payment was completed in this manner, delivered its deed to the purchaser, at the same time obtaining a release for such land from the particular mortgagee whose mortgage encumbered it.

On July 8th, 1929, a time and a situation in the affairs of the company were reached when it had outstanding sales contracts, of the character before referred to, upon which there was due to it for unpaid installments $53,000 and from which it could not realize any cash; that for more than a year it had done no business and that some $40,000 or $50,000 in cash was required by it to obtain the necessary mortgage releases in order that it might fulfill its sales contracts then due and completed.

With this condition of its affairs existing, a bill of complaint was filed on July 8th, 1929, by stockholders and officers of the land company praying that the company be decreed to be insolvent and that a receiver be appointed, such bill disclosing that the board of directors of the company on April 19th, 1929, having been informed that such proceedings were about to be, and would be, taken, adopted a resolution in which they consented to the immediate appointment of a receiver.

A receiver was immediately appointed on July 8th, 1929, and a rule to show cause issued, returnable July 29th, 1929, directed to and required to be served upon each creditor and stockholder of the company, to show cause why the receivership should not be continued.

As far as the record before us shows there is nothing indicating that this rule was ever served upon either creditors or stockholders of the company, nor does it show anything respecting the receivership, the continuance thereof or any activity upon the part of such officer until January 21st, 1930, when he filed a petition praying for the appointment of counsel, followed by an order, made on the same date, appointing counsel. There is nothing showing that any notice of this application was given to any one.

It then appears that, subsequent to the appointment of the receiver, each of the holders of the four mortgages made application for and obtained leave, with the consent of the receiver, to foreclose their mortgages.

On June 9th, 1930, the receiver filed a petition praying that the appellants be required to show cause why a lien should not be impressed upon the lands mortgaged to them, for receiver's fees and costs, including receiver's counsel's fees and costs, and why such lien should not be decreed to be prior to the liens of their mortgages. This petition simply sets up the fact of the appointment of the receiver on July 8th, 1929; that he entered upon his duties; that the only assets of the insolvent company were the lands covered by appellants' mortgages; "that he had done much work in and about undertaking to market the said lands or to adjust sales

of parts of such land already made;" that petitions had been or were about to be filed for permission to foreclose the mortgages in question held by the appellants; that he, as receiver, had no proper defense to such proceedings and believed an order should be made permitting such foreclosures as he is unable to either pay the mortgages or to re-finance the properties and believed that, at a sale, the property would not bring sufficient to pay the said mortgages and his fees and costs as receiver. This petition is in nowise supported except by the general verification of the receiver.

Upon the filing of this petition a rule to show cause issued, directed to these appellants, requiring them to show cause on June 17th, 1930, why an order in accord with its prayer should not be made.

As far as shown by the record before us there was before the court below, on the return of this rule, only the petition of the receiver, verified in the manner before indicated, and an affidavit of the appellant Ezekiel V. Corson. It appears that thereafter nothing took place until December 15th, 1930, when the order under review was made and which is in this language:

"Ordered and adjudged that a lien be and hereby is impressed upon the said lands of the Bay Front Land Company to the amount of the receiver's fees and costs including his counsel's fees, which fees are to be fixed by this court, which lien shall be prior to the mortgages held by respondents, and which are now being foreclosed, and such lands and premises shall be sold under such mortgages subject to the lien as aforesaid."

On June 9th, 1930, the date of filing the petition of the receiver, which is the sole basis for this order, the condition of the foreclosure proceedings of appellants' mortgages was as follows:

The Ezekiel V. Corson matter went to a sale on June 9th, 1930, the same day the petition was presented, and such sale was confirmed June 20th, 1930; the Clark foreclosure had been commenced, leave therefor having been obtained May 20th, 1930, and bill having been filed May 22d, 1930; and

the Mowrer proceeding had likewise been commenced, leave therefor being obtained April 4th, 1930, and bill filed November 30th, 1930. The Corson proceeding was commenced shortly thereafter, the consent therefor being obtained June 27th, 1930, and bill filed July 26th, 1930.

At the time the order appealed from was entered, December 15th, 1930, the Ezekiel V. Corson foreclosure had long since been fully completed; the Clark proceeding went to a sale on the same day the order was entered and such sale was confirmed eleven days thereafter; the Mowrer proceedings had gone to a sale on November 24th, 1930, and such sale was confirmed December 5th, 1930; the Amos Corson proceeding did not reach a sale until January 12th, 1931, which sale was confirmed January 22d, 1931.

Five grounds for reversal of the order under review are advanced and argued, viz.:

1. Because it directs that a lien be impressed upon said lands without first determining that said receiver and his counsel are entitled to be paid fees to be assessed against said Bay Front Land Company, the owner of the lands.

2. Because it did not appear at the time said order was entered that said receiver and his counsel were entitled to be paid fees, the amount of which should be charged against said lands.

3. Because the impression of said lien is unlawful in that the purport and extent thereof is uncertain.

4. Because there was nothing before the court to justify the making and entry of such order.

5. Because the impression of the lien prior to the mortgages was unlawful and oppressive and therefore unjust and inequitable.

The court below based its action upon *Bankers Trust Co.* v. *Maxson, 100 N. J. Eq. 1,* a cause in chancery, the opinion in which was delivered by the chancellor. But in that case the situation appears to have been, in many particulars, different from that before us. There the application, primarily, was to settle liens against the proceeds of a sale of mortgaged premises. A receiver had been appointed and had under-

taken his duties and subsequently the foreclosure had been commenced and proceeded to a sale. It was a hotel property and the receiver, with notice to the mortgagees, had been authorized to carry on the hotel business, borrow moneys upon his certificates with which to replenish personal property necessary for that purpose, pay insurance, make repairs, &c. In that case, and under the circumstances there present it was decreed that the receiver was entitled to a "lien upon the proceeds of the sale of the mortgaged premises * * * prior to the lien of the complainant's mortgage, for such sum as he expended for betterments to the mortgaged premises and for the preservation thereof and for his compensation and costs of suit." The question whether the receiver was entitled to include in his lien the expenses of operating the hotel was reserved until the filing of his final account as was also the amount of all his expenses. We are referring to these points of fact wherein this case differs from the one before us for the purpose only of showing that they do not run parallel and not for the purpose of passing upon or approving the result reached therein.

The chancellor, in that case, based his findings upon two cases in this court. *Seidler* v. *Branford Restaurant, Inc., 97 N. J. Eq. 153; affirmed, Ibid. 531,* and *Greenbaum* v. *Lafayette and Broad Realty Corp., 97 N. J. Eq. 536.*

In *Seidler* v. *Branford Restaurant, Inc., supra,* a receiver was appointed and, by order of the court, continued the operation of the restaurant (which was the business of the insolvent company) for a period of time until it appeared that such business could not be successfully or profitably conducted, as during such period of operation by the receiver, it had been conducted at a loss. The personal property of the company was covered by a chattel mortgage of $10,000, the validity of which was questioned by the receiver who took steps to restrain its foreclosure, resulting in an order, consented to by both the receiver and the mortgagee, holding that the mortgage was valid and directing that the receiver sell the assets of the company free of the lien of the mortgage and that the lien thereof attach to the proceeds. Such a sale

was had and the mortgagee purchased the property for $9,000, none of which was paid to the receiver.

An order confirming the sale directed the purchaser-mortgagee to pay the receiver $1,800 as his compensation and that of his counsel, also $150 for appraiser's fees and that he assume and pay the rental of the premises in which the business was conducted during the occupancy thereof by the receiver. These sums were finally paid under protest and the order directing such payment was appealed from.

We held that had the conditions of sale been complied with, the purchase price would have been paid into court to be distributed to the various claimants as they were shown to be entitled thereto. The complaint of the mortgagee was that the expenses of the receiver could not be preferred over his encumbrance, existing at the time of the receiver's appointment. As to this we held, "on the general principles of equity themselves, such expenses may properly be given preference in distribution. In the nature of things the cost of administration and of just distribution, where the court has jurisdiction, must be placed ahead of the claims of creditors whether secured or unsecured, and so say the text writers. Pomeroy, in his book on *Equit. Rem.* (*2d ed.*) § *1641*, says: 'In general, expenses of the receivership are payable out of the fund in the receiver's hands prior to the payment of a mortgage debt. The reasons for such a rule are apparent. The receiver represents the court and acts for the interest of all concerned.'

"High, in his treatise on receivers (at pages 961, 962), states the rule to be that 'the costs of the appointment of the receiver are entitled to priority of payment out of the fund realized by him before all other demands, and the costs of the receivership are properly given a preference over prior liens, although the appointment of the receiver was made without prejudice to prior liens.'" In that opinion of this court, *Attorney-General, ex rel. Bliss* v. *Linden Cemetery Association, 90 N. J. Eq. 404; affirmed, 91 N. J. Eq. 329,* is also cited. There, too, the fund, or a fund, was in the hands of the receiver. It was further urged by the appellant

in the *Seidler v. Branford Restaurant, Inc., Case* that the expenses of the receiver should not have been imposed upon the mortgagee because the services of the receiver, in continuing the business, were not to his benefit as the holder of the mortgage, and this court held, "it would be unfortunate, indeed, if the rule were that an officer of the court, acting under its direction, is dependent for his expenses and compensation on the success or failure, in a commercial sense, of his efforts in carrying out the order of the court. Receivers are but arms of chancery, appointed to preserve the property of corporate and similar entities for the benefit of all parties in interest, and, in cases of insolvency, to administer the estate under the direction of the court. In theory of law, at least, a receiver has no part in his selection but stands as the representative of the court impartially between the parties. To hold that one thus chosen and thus serving should incur the expenses and perform the duties of the receivership at the risk of these expenses and services being beneficial or otherwise to the estate or to any of the parties in interest would be contrary to the whole theory of his office, deprive the courts of the services in many cases of competent administrators and be subversive of the administration of this important branch of equity jurisdiction."

In *Greenbaum* v. *Lafayette and Broad Realty Corp., supra,* the situation was that a receiver had been appointed upon the application of one Greenbaum, one of three stockholders of the corporation.

Upon appeal from such order to this court, it was reversed. Subsequently the receiver filed his report, setting up receipts and expenditures, showing an unpaid account for auditing of $135, and a balance in his hands of $859.35. Thereafter he applied for, and obtained, an order making him an allowance of $750 for his services and directing that this sum together with the above item of $135 be paid out of the funds in his hands.

From this order the corporation appealed and this court held—

"The right of a receiver to be paid his costs from the

*corpus* of the estate which he is called on to administer is fully considered in *Seidler* v. *Branford Restaurant, Inc.,* * * * *96 N. J. Eq. 153,* and it is there held that where a receiver is appointed by a court having jurisdiction to make the appointment the costs and expenses of the receivership are a first lien on the assets of the corporation of which he is the receiver, *and may by the court be placed ahead of mortgages and other liens.* In the present case the court of chancery was undoubtedly possessed of jurisdiction to make the appointment, even though the jurisdiction was improvidently exercised, and for the reasons given in the case cited the order to pay the fees of the receiver and auditor will be affirmed. It does not follow, however, that these charges in the present case should be permitted to ultimately fall upon the appellant. The action of the court in appointing the receiver was invoked by Greenbaum, the complainant, and that without warrant. It would be inequitable that the cost of the receivership, which his action thus brought into existence, should be placed upon the corporation, the victim of his wrongful act; and while the order appealed from is affirmed, it will be with the further direction to the court below that the charges in question shall be taxed as part of the costs of the corporation as against the complainant, Greenbaum, and be collectible as part thereof."

Now, it cannot be open to question that a receiver appointed by a court of proper jurisdiction is entitled to be compensated for his services and expenses, including services of counsel, and such payments are entitled to priority over all others secured or unsecured, prior or subsequent to the decree of insolvency which participate, for payment, in the assets of the insolvent, and this is so notwithstanding the services so to be paid for may or may not have been beneficial to the interests of the claimants.

It is to be noted that in *Seidler* v. *Branford Restaurant, Inc.; Attorney-General, ex rel. Bliss* v. *Linden Cemetery Association,* and *Greenbaum* v. *Lafayette and Broad Realty Corp., supra,* there were funds in the hands of the receiver, from which the payments were directed, and the priority of payment was adjudged.

In *Bankers Trust Co.* v. *Maxson, supra,* upon which the court below relied, there was no fund in the hands of the receiver, but there was a fund under control of the court, consisting of the purchase price under the foreclosure sale.

In the case before us no such condition exists. In each foreclosure the mortgaged premises were purchased by the mortgagee at the sale at far less than the amount established as due by the final decree, namely:

Ezekiel V. Corson, final decree $52,091.70 and costs and interest, sold to mortgagee for $125; Hiram S. Mowrer, final decree $43,969.40 and costs and interest, sold to mortgagee for $125; Mabel G. Clark, executrix, final decree $37,907.99 and costs and interest, sold to mortgagee for $3,500, and Amos Corson, final decree $36,095.25 and costs and interest, sold to mortgagee for $200.

As all of these sales were confirmed, and without objection, it must be assumed that the actual value of the lands was not in excess of the amounts due upon the respective decrees and that at such sales the lands brought the highest and best price obtainable in cash.

Now it seems to us that the order under review is not to be sustained under any authority cited.

All the authorities, and equity and good conscience require, that a receiver, properly appointed, be paid for his services and costs of administering the estate as an officer of the court, but that such payment shall be made from funds in the hands of such officer, if any there be. *High Rec. (3d ed.)* § *796; Pom. Eq. Jur. (2d ed.)* § *1659; Dan. Ch. Pl. & Pr. (6th ed.)* §§ *1745, 1748.*

And it is further held that while a receiver's "compensation is usually allowed out of the fund or property in the receiver's possession, yet when he has been appointed over mortgaged premises, but not at the suit of, nor with the consent of the mortgagee, he may be refused compensation out of the proceeds of a foreclosure sale of the premises." *High Rec. (3d ed.)* § *796 p. 730.*

And again where the funds in the hands of the receiver are insufficient to meet the allowance for compensation and

costs, the balance may be directed to be paid by the parties at whose suit the appointment was made (*Pom. Eq. Jur.* (*4th ed.*) § *1665; High Rec.* (*3d ed.*) § *796 p. 730*), and to the extent "if there are no assets in his hands appliable to the payment of his compensation, it is proper to discharge him without making payment of his charges by the persons procuring his appointment a condition precedent to his discharge, leaving the matter for subsequent determination in the cause."

It would appear that our statute, "An act concerning corporations" (*Rev. 1866—2 Comp. Stat. p. 1595* §§ *85, 86*), contemplates nothing else and is not to the contrary of the beforementioned authorities.

Now, in the case before us the receiver had no funds in his possession created by any act of his or order of court.

The mortgaged lands could not have been sold free of their mortgage encumbrances under section 81 of the Corporation act, *supra,* because, admittedly, the legality of such mortgages was free from question.

The lands could have been sold subject to such mortgage liens, but this was not done, because, admittedly, they were not worth the amount of such liens.

The only other resources of the insolvent company were the outstanding sales contracts and the receiver took no steps to collect the unpaid amounts thereon. It is altogether likely that a good and sufficient reason was that either they could not be collected or, if collected, the funds derived therefrom would not have been sufficient to provide the necessary moneys to secure releases from the various mortgages.

Under these circumstances we can find no equitable justification for the order under review, and the proposition that the court, in such a state of affairs, may reach out and decree that a receiver's compensation and costs and expenses shall attach as a lien to mortgaged premises and that in advance of the liens of such undisputed mortgages, as here situated and circumstanced, is, at least, startling, and shocking to equity and good conscience, and if permissible would work to the unsettling of the security of mortgage loans.

If the receiver has performed services, for which he is entitled to be compensated, together with expenses in the conduct of his office, and so likewise has his counsel, they are, of course, entitled to be compensated and reimbursed, but, in the present cause, that reimbursement and payment must come from the parties bringing about their appointment, or some source other than the lands covered by the appellants' mortgages. *Pom. Eq. Jur. (4th ed.)* § *1665.*

The order appealed from is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 15.