Two questions require decision in this cause.
1. Are the fees of the receivers, of their counsel and costs of administration entitled to priority to the proceeds resulting from the sale, by the receivers, of certain of the property and assets of the insolvent defendant corporation, or are the taxes due to the city of Jersey City thereon entitled to priority when, as here, those taxes were assessed and became due during the administration of the insolvent corporation by the receivers but subsequent to the time when the court of chancery had already impressed the property to be sold with a prior lien for the fees of the receivers, their counsel and costs of administration?
2. Was the order of the court, authorizing the sale free from liens, including municipal taxes, as it is claimed, improvidently made?
The facts which give rise to these questions are not in dispute. James Leo Co., a corporation of this state, was engaged in the business of manufacturing paper boxes in Jersey City. At the instance of stockholders and creditors, who alleged that the business was being operated at a great loss and to their prejudice, the company was, on August 6th, 1930, adjudged insolvent. Respondents were appointed statutory receivers. They promptly qualified and took immediate possession of the business and holdings of the company. With leave of the *Page 320 
court, they operated the business. Notwithstanding their best efforts (their ability is unquestioned) they, too, soon learned that the business could not be operated without great loss. Whereupon, they set out to find a buyer.
The receivers bargained for and received a bid for the greater portion of the holdings of the insolvent corporation, as a going concern. This bid was made by the president and two stockholders of the insolvent corporation, representing six hundred and ten shares or sixty-one per cent. of its issued and outstanding capital stock. These holdings consisted chiefly of the real property known as the main factory building and the mill building immediately adjoining; all machinery, furniture, equipment, merchandise on hand, accounts receivable, c. The purchase price was to be a sum equal to the sum necessary fully to pay and satisfy all debts of the insolvent corporation, and all liens upon its property, as of November 17th, 1930. This sum totaled $74,938.34.
It was made up as follows:
Due on first mortgage on part of the factory property ... $36,800.00
Due Jersey City for taxes for 1929 and 1930, including
 taxes on personalty for 1930 .......................... 11,391.40
Due for wages and commissions ........................... 1,181.44
Due on notes ............................................ 8,262.44
Due on accounts payable ................................. 17,302.64
 ___________
 Total ............................................... $74,938.34

To pay these claims the buyers proposed to advance $71,000 in cash; permit the receivers to set aside accounts receivable to the extent of $10,000 and to use so much thereof as was necessary to make up the difference. In addition thereto, the buyers offered to deliver up to the receivers their six hundred and ten shares of stock and further consented to a fee of $20,000 for the receivers, their counsel and administration costs. This sum, so they agreed, was to be made a charge or lien upon the remaining property and assets of the insolvent corporation.
The receivers formally presented this bid to the court. They strongly recommended the approval thereof. In support *Page 321 
of their recommendation they pointed out, inter alia, that neither the insolvent corporation before the receivership, nor they, as receivers, had been able to operate without heavy losses; that the mortgagee was threatening foreclosure because of defaults in principal, interest, and taxes; that the purchase price was sufficient (exclusive of their fees and those of their counsel and costs of administration) to pay all indebtedness of (including liens against) the insolvent corporation; that the remaining property and assets in their hands (inventoried and appraised for $105,000) had, in their opinion, an equity for the remaining thirty-nine per cent. of the stockholders which was "relatively as high as the equity of the stockholders representing sixty-one per cent. of the capital stock * * *" in the property and assets which they agreed to purchase.
Accordingly, the court, on November 17th, 1930, approved the offer of purchase; authorized and ordered the receivers to consummate the sale. In so doing, however, the court ordered, in pursuance of the agreement between the buyers and the receivers, that the fees of the receivers, of their counsel, and costs of administration be made a paramount charge and lien upon the remaining property and assets in the hands of the receivers to the amount of $20,000 as the buyers' share of the said fees and costs. The sale was consummated and all the debts and liens of the insolvent corporation as of November 17th, 1930, save fees and costs of administration, were fully paid and satisfied.
Since that day the receivers have continued in possession of the remaining property and assets because of their inability to sell same any sooner. Finally, however, they did procure a bid of $12,000, free of all liens, for the property remaining in their hands. They formally presented that bid, on June 21st, 1937, to the court for its approval. In their petition they stated, generally, that they had received from rentals for the property proposed to be sold, including other sources (they received an advance of $800 from one of the receivers), the sum of $4,652.33; that they had expended the sum of $4,293.37 for the payment of insurance premiums, repairs, improvements, c., and which expenses they characterized as *Page 322 
necessary for the preservation of the res. But during all this time (1931 to 1937, inclusive) the receivers paid nothing to the city of Jersey City on account of the taxes ($10,926.73) due it. The receivers again recommended to the court that the offer be accepted and that the sale be free of all liens. The court on August 4th, 1937, approved the sale and ordered that it be free from liens with exceptions not here material.
The city of Jersey City appealed from that order. But it did not further prosecute the appeal because the receivers notified the city of Jersey City that they would apply to the court for an order modifying the order of August 4th, 1937, so as to eliminate therefrom the provisions that the proposed sale be free from all liens. The receivers made such an application. In their petition to the court they clearly stated the sharp issue between the city of Jersey City and themselves on the question of the priority of their respective claims. They stressed the binding force of the order of November 17th, 1930, which gave them priority; and prayed that the court adjudicate that their claim was prior to the claim of the city of Jersey City; that the court permit them to sell the property free of liens, and that the proceeds of the sale be disbursed by the court pursuant to such determination.
The court, on February 18th, 1938, made the order modifying the order of August 4th, 1937. The modified order now provides, substantially, that the fees of the receivers, of their counsel, and costs of administration are a paramount lien upon the property ordered sold; that these fees and costs are especially a prior lien to the taxes due to the city of Jersey City for the years of 1931 to 1937, inclusive, since same accrued subsequent to the order of the court of November 17th, 1930, by which they were made a prior lien on the same property. Finally, this order provides that the sale be free from the lien claim for taxes.
Appellant challenges the propriety of the several stated provisions of this order. That challenge is rested upon the grounds that the fees of the receivers, their counsel, and administration costs are not a prior lien, on the property to be sold, to that of the city of Jersey City for the taxes due it *Page 323 
for the years 1931 to 1937, inclusive, and the provision that the sale of the property be free from liens was improvidently made.
1. Our act concerning general property taxes provides that:
"All unpaid taxes on lands, with interest, penalties and costs of collection shall be a lien on the land on which they are assessed on and after December first of the year in which they fall due." Rev. Stat. 54:5-6.
And it further provides that:
"Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens." Rev. Stat. 54:5-9.
Notwithstanding these statutory provisions it has become a settled principle in equity jurisprudence that fees of receivers, of their counsel and costs of administration are generally entitled to priority in payment to all liens, special or general, from funds of the corporation which came into their hands. Typical cases are Attorney-General v. Linden CemeteryAssociation, 90 N.J. Eq. 404, 407; Seidler v. BranfordRestaurant, Inc., 97 N.J. Eq. 531; Albert Kernahan, Inc., v.Franklin Arms, Inc., 107 N.J. Eq. 468. That principle springs from the inherent power of the court of chancery, in the administration of justice, to protect its receivers, as the arms of the court, in their official labor of preserving, administering and liquidating insolvent corporations for the benefit of all parties in interest, under the immediate supervision and direction of the court. Attorney-General v.Linden Cemetery Association, supra; Seidler v. BranfordRestaurant, supra. And that principle is further fortified by section 85 of our Corporation act. Rev. Stat. 14:14-22, which provides that receivers should be compensated for their services, costs and expense of administration before making a distribution of assets. But this equitable principle is not without its exceptions. Thus, we have held that taxes which accrued while the receiver was operating an apartment as a *Page 324 
going business were current charges and expenses incident to such operation, and the receiver was obliged to pay them. Walser v.Northern Valley Building Corp., 109 N.J. Eq. 126. And receivers who take possession, "take it cum onere," and must bear and pay all of the charges, including taxes, incidental to the occupation which they have enjoyed. McKenzie v. Standard Bleachery Co.,Ibid. 429, 434.
Because the receivers repaired, insured, rented and managed the property, because they derived an income therefrom, appellant argues that they were therefore using the property as a going concern, and, therefore, should have paid the taxes due the city of Jersey City as a necessary operating expense. Respondents answer this argument by denying that what they did constituted a user of the property as a going concern. Their insistment is that what they did was merely to preserve the property from waste and nothing more.
We are not willing to base our determination of the question under consideration upon the meager proofs submitted as to this phase of the case. And in passing, we also desire to mark the fact that this is not, in our opinion, the type of case in which there are two or more funds, arising from different sources, upon which there are separate liens, but all within the receivership, and hence require a pro-rating of the funds between the parties.Albert Kernahan, Inc., v. Franklin Arms, Inc., supra (atp. 471). Cf. Franklin Lumber Co. v. Harold Anderson, Inc.,104 N.J. Eq. 306; affirmed, 105 N.J. Eq. 542; Meister v. J.Meister, Inc., 103 N.J. Eq. 78.
We are firmly of the opinion that the determination of the question before us lies in the conduct of respondents which we conclude constituted a waiver of their right of priority to their fees and costs.
Respondents knew that the court of chancery — a branch of the judicial part of our government — would not under all circumstances exercise its inherent equitable power of protecting its receivers especially if to do so would be to ignore the mandates of another branch of our government — the legislative part. *Page 325 
Respondents knew that the legislature had specifically and clearly charted the course for receivers to follow, in the administration of their trust for the benefit of all parties, to the end of obtaining priority of their fees and expenses.
Respondents knew that the law sedulously guards and protects the proceeds of municipal taxation so that they may primarily serve the purposes for which they are exacted. Brunner v.Morrison, 123 N.J. Eq. 224.
Notwithstanding this knowledge, respondents chose not to follow the charted, statutory course. Although the buyers agreed that their share of respondents' fees and costs was $20,000, not one penny of that sum was deducted from the sale price before the receivers distributed the proceeds thereof in payment of all claims, special and general, as of November 17th, 1930. Respondents' allowances were transferred to the remaining property in their hands. Whether respondents consented to this procedure because they thought that they were protected in the equity of the remaining property which had been appraised for $105,000, or whether they consented because they wanted to be helpful is, unfortunately, beside the point. Clearly they were not obliged to do so. True, appellant was paid the taxes due it as of November 17th, 1930. But it is also true that all other creditors, special and general, were paid in full as of that day. That the assets of the insolvent corporation warranted no such distribution is now free from dispute. Respondents voluntarily ignored and departed from the statutory procedure. They, therefore, relinquished or abandoned their known right of priority of their fees and costs. That constituted a waiver. Cf.Smith v. National Commercial Title and Mortgage Guaranty Co.,120 N.J. Law 75, 83.
After having waived their rights to fees and costs of administration, and after having continued in possession of the premises for seven years without paying taxes, and after all other circumstances here disclosed, respondents may not at this late day, revive their claim to priority and by so doing defeat the statutory priority given to appellant for its taxes. Appellant is, under the facts of the case at bar, entitled to priority for the taxes due it. *Page 326 
2. In deciding questions which arise, as here, in the administration of the assets of an insolvent corporation, we have uniformly regarded and treated our statute concerning insolvency, receivers and reorganizations of corporations, as essentially a bankruptcy act, and have applied the applicable principles controlling such questions in bankruptcy proceedings. Grobholz
v. Merdel Mortgage Investment Co., 115 N.J. Eq. 411, 420 (and cases cited there). In bankruptcy proceedings the power to sell property in custodia legis free and clear from incumbrances is recognized, as existing by implication, and has been long exercised. Van Huffel v. Harkelrode, 284 U.S. 225, 231;76 L.Ed. 256, 259. "Thus, while valid liens existing at the time of commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation." Isaac v. Hobbs Tie Timber Co., 282 U.S. 734,739; 75 L.Ed. 645, 667, 668.
This power is also regarded and treated as being inherent in the court of chancery where it has been and is now often exercised. Cf. J.W. Pierson Co. v. West Orange-Verona BuildingCo., 112 N.J. Eq. 426, 427. And where the property to be sold is "encumbered with mortgages or any other lien the legality of which is questioned, and the property is of a character materially to deteriorate in value pending litigation" the court of chancery may order the receiver to sell same, pay the money into court, and direct the disbursement thereof subject to liens which existed against the property before sale. Rev. Stat.14:14-20. But the exercise of this inherent and statutory power must be justifiable, in equity and good conscience, by the facts and circumstances of the particular case. Cf. Foster v. BayFront Land Co., 109 N.J. Eq. 569.
The offer to buy the property was, as already stated, conditioned that the same be sold free and clear of liens. In addition thereto we are told that some of the taxes due the city of Jersey City (included in the total of $10,926.73) are subject to revision as a result of pending appeals to the State Board of Tax Appeals. The order to sell free of liens was, *Page 327 
therefore, not improvidently made but on the contrary was justifiable in equity and good conscience. The lien, however, for taxes should be transferred to the proceeds of the sale.
The cause is remanded to the court below, there to be treated consistently with this opinion. No costs are allowed to either party.
For affirmance — HETFIELD, RAFFERTY, JJ. 2.
For reversal — THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, WALKER, JJ. 13. *Page 328