36 N.J. Super. 361 (1955)
115 A.2d 644
JEAN CAMPBELL AND JACK J. CAMPBELL, PLAINTIFFS,
v.
ANNA HELLER AND ARTHUR HELLER AND CHELSEA TITLE & GUARANTY CO., A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 15, 1955.
*363 Mr. Isaac C. Ginsburg, for plaintiffs.
Mr. Daniel Bell, Jr., for defendants (Messrs. Kirkman, Mulligan & Harris, attorneys).
HANEMAN, J.S.C.
Plaintiffs herein seek the specific performance of an agreement to purchase real estate. The defendants Heller seek the rescission of the contract.
The facts in connection herewith are as follows: On September 22, 1954 the plaintiffs and the defendants Heller entered into an agreement under the terms of which the *364 said defendants agreed to purchase a specifically described parcel of real estate situate in the City of Ventnor City, County of Atlantic and State of New Jersey, also referred to in said agreement as the "northerly portion of Lot 13 in Block 71-B, Ventnor City Tax Map." The agreement called for final settlement and closing on October 22, 1954. On that date the parties attended at the office of the Chelsea Title & Guaranty Company of Atlantic City, New Jersey, by virtue of a prior arrangement to that effect. Plaintiffs thereupon presented their duly executed deed and delivered the same to the settlement clerk. The settlement clerk proceeded to compute the amount due from the defendants Heller and advised them of the balance of the purchase price so required to be paid. At that time the defendants Heller were represented by counsel, who examined the certificate of title and advised that a television aerial installed by the plaintiffs on the balance of Lot 13 in Block 71-B encroached on the land to be conveyed, and that electric wires for servicing the adjoining house were strung over said land and thus violated the covenants of the agreement. However, he then voiced no objection to a restrictive covenant which appeared thereon. The defendants Heller thereupon drew a check to the order of the Chelsea Title & Guaranty Company for the balance of the purchase price and delivered the same to the settlement clerk, with the advice from their counsel that it was not to be used until the plaintiffs had eliminated the television aerial and the electrical wires, and until the clerk heard further from said counsel. At the same time, counsel for the Hellers obtained a copy of the restriction referred to in the certificate of title as affecting the realty here involved. They did not then realize that a dwelling house could not be erected on the land involved under the terms of said restriction.
At 3 o'clock in the afternoon of the same day the said Hellers stopped payment on their check and the Chelsea Title & Guaranty Company was advised that the said Hellers refused to make settlement. On the following day the plaintiffs received a letter from the Hellers' counsel advising that *365 they "have terminated the agreement of sale between yourself and them, dated September 22, 1954, because of the encroachment of the television pole antenna and the electric wires as shown on the survey."
The Hellers, by way of defense, now assert not only the above two reasons, but as well that the restrictions in the chain of title prohibit the use and/or occupancy of the premises as a single-family residence site.
The portions of the agreement of sale here material read as follows:
"2. Settlement is to take place at the office of any reputable title company of Atlantic City, N.J., on or before the 22nd day of October, 1954, at 11 o'clock A.M., which time is of the essence of this agreement, when the Seller shall deliver a special warranty deed for the said premises, and the balance of the purchase price is to be paid or secured as follows: The balance of the purchase price in the sum of Forty-nine Hundred ($4900.00) Dollars to be paid in cash at the time of final settlement. The above consideration is to be delivered to said title company to be disbursed after said title company has completed the necessary continuation search to cover the record date of said deed.
3. In the event of the Buyer not making settlement in accordance with the terms hereof the payment of payments made on account shall, at the Seller's option, be forfeited as liquidated damages for the failure of the Buyer to settle; or be applied on account of the purchase price.
4. The title to be delivered shall be a marketable title and insurable by said title company and shall be free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as a single family residence site and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted."
The portion of the restriction admittedly affecting the lot reads as follows:
"That no more than one building shall be erected upon any lot upon said map, except that a private garage may be erected upon *366 a lot upon which a dwelling house is also erected as hereinafter provided."
The land conveyed was the northerly portion of Lot 13, Block 71-B. On the southerly portion of the lot here involved, a one-family dwelling house had theretofore been constructed.
Plaintiffs, by way of answer to the defense of the defendants Heller, assert that either (1) the contract between the plaintiffs and the Hellers was merged in the deed delivered to the Title Company and they cannot now be heard to complain of the existence of said restriction, or (2) the defendants Heller waived the above quoted provision of said contract relating to restrictions.
The agreement of sale calls for the delivery of a special warranty deed, which said deed was delivered by the plaintiffs to the Chelsea Title & Guaranty Company, as above noted. A special warranty deed has the same effect as if the grantor had covenanted against the claims and demands of said grantor and all persons claiming or to claim by, through or under him. N.J.S.A. 46:4-8. It must be plain that such a covenant is neither a general warranty nor a specific covenant against all encumbrances. The deed as delivered contained no warranty that "there are no restrictions in any conveyance or plans of record affecting the said premises which will prohibit the use and/or occupancy thereof as a single family residence site."
It is generally recognized that the acceptance of a deed for lands is to be deemed prima facie full execution of an executory contract to convey, unless the contract contained a covenant collateral to the deed. Normally, to be deemed collateral and independent, covenants must not be connected with the title, possession, quantity or emblements of the land. The rule that the acceptance of a deed for land is to be deemed prima facie full execution of an executory contract to convey, and extinguishes and satisfies all previous covenants which relate to or are connected with the title, possession, quantity or emblements of the land does not apply to collateral *367 covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed or which are not necessarily performed or satisfied by the execution and delivery of the deed. Until consummated, however, an executory contract is subject to modification. In all cases, a deed, when accepted, is presumed to express the ultimate intent of the parties with regard to so much of the contract as it purports to execute. The executed contract supersedes all prior negotiations and agreements where the last contract covers the whole contract embraced in the prior one. The question of merger is, however, a matter of intention and proof. Herman v. Most, 125 N.J.L. 563 (Sup. Ct. 1941); Magna Mfg. Co., Inc. v. Aetna Casualty, etc., Co., 129 N.J. Eq. 142 (Ch. 1941); Dieckman v. Walser, 114 N.J. Eq. 382 (E. & A. 1933); Sprague v. Eypper & Beckman, Inc., 114 N.J. Eq. 445 (E. & A. 1933); Bogert v. Citizens First National Bank, etc., Co., 131 N.J.L. 218 (E. & A. 1944); Long v. Hartwell, Adm'r of Carpenter, 34 N.J.L. 116 (Sup. Ct. 1870); West Paterson Sand & Gravel Co. v. Great Notch Corp., 107 N.J.L. 309 (E. & A. 1931).
Where delivery of a deed is the performance of only such part of a contract as it purported to execute, the balance of the covenants are not thereby deemed merged in said deed. If the agreement of sale provides for a series of acts at successive periods, or for distinct or separable acts to be performed simultaneously, an executory contract becomes extinct upon the delivery and acceptance of a deed only as to such of its parts as are covered by the conveyance. Where the delivery of a deed is only part of the execution of an executory contract, a merger does not result. Curtiss-Warner Corp. v. Thirkettle, 99 N.J. Eq. 806 (Ch. 1926), affirmed 101 N.J. Eq. 279 (E. & A. 1927).
The case of Bogert v. Citizens First National Bank, etc., Co., 131 N.J.L. 218 (E. & A. 1944), cited by plaintiff, is distinguishable from the case sub judice. There the agreement provided for a conveyance "by deed of bargain and sale free from all encumbrance." The covenant relating to encumbrances was initially intended to be incorporated in the deed. *368 The court properly held that the contract required a covenant against encumbrances to be inserted in the deed and the failure to so insert raised the presumption that the instrument as delivered fully expressed the final intent of the parties.
It is to be noted that in the present suit, the provision for the delivery of a special warranty deed and the "guarantee" against restrictions were contained in two distinct paragraphs numbered 2 and 4 respectively, and separated by a paragraph numbered 3 providing for the eventuality of the buyer's failure to pay. They are disjointed and independent covenants. There was no agreement, actual or implied, that such a provision should be incorporated in the deed.
In Merchants' & Traders' Developing Co., Inc., v. Mercer Realty Co., 99 N.J.L. 442 (E. & A. 1924), the court had before it a contract for the sale of land under which the vendor represented that "`all the improvements now on said premises have been paid for in full and that there are no assessments pending at the present time against said premises.'" A general warranty deed pursuant to said agreement was delivered to the plaintiff. It subsequently came to light that an assessment was made for improvements upon the property after the delivery of the deed, which improvements had been made prior to said conveyance. Although the deed contained a covenant that the property was free and clear and unencumbered from taxes, assessments and encumbrances, the court held that there was no merger and that the agreement was independent of and collateral to the deed.
A similar situation exists in the case sub judice. It is to be noted that paragraph 2 of the agreement of sale provided for the delivery of a special warranty deed. As above stated, a special warranty deed warrants merely against any claims or demands of the grantor and all persons claiming or to claim by, through or under him. Such a deed makes no warranty or covenants as to the status of the title prior to the vesting in the grantor. The parties to the agreement here being considered saw fit to provide for a special warranty deed, but in addition, the grantor guaranteed, by *369 a separate paragraph numbered 4, that there were no restrictions of record which would prohibit the use or occupancy of the premises as a single-family residence site. This covenant was collateral to and independent of the covenant calling for the delivery of the special warranty deed, and not intended to be incorporated therein. Delivery of the deed here in question was only in part execution of the executory contract. Under the very terms of said contract, the vendor's quoted covenant must be deemed to have continued beyond delivery of said deed. The covenant of the vendor as to the use of the realty is an independent, separate and collateral covenant and not deemed merged in the deed.
In addition, a contract for the sale of real estate continues executory until a deed is delivered and accepted. The deed is inoperative until accepted by the grantee. Such acceptance is a question of intent. Rennebaum v. Rennebaum, 78 N.J. Eq. 427 (Ch. 1911), affirmed 79 N.J. Eq. 654 (E. & A. 1912); Blachowski v. Blachowski, 135 N.J. Eq. 425 (Ch. 1944).
Under the facts here present, the Hellers did not intend to accept the deed and there was consequently no merger in any event.
Insofar as the asserted waiver is concerned, in McCue v. Silcox, 122 N.J.L. 12 (E. & A. 1939), the court said:
"`"Waiver" has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it. Thus, a "waiver" occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it; a "waiver" takes place where one dispenses with the performance of something which he has a right to exact.' 67 Corp. Jur. 289. See, also, Aron v. Rialto Realty Co., 100 N.J. Eq. 513; affirmed 102 N.J. Eq. 331; Smith *370 v. National Commercial Title and Mortgage Co., 120 N.J.L. 75; Sullivan v. James Leo Co., 124 N.J. Eq. 317."
See also Long v. Board of Chosen Freeholders of Hudson County, 10 N.J. 380 (1952).
Under the facts here present it cannot be said that there was a voluntary and intentional relinquishment or abandonment of a right on the part of the Hellers known by them to exist, with the intent that such right should be surrendered and that they be thereafter forever deprived of its benefit. Nor was there such conduct as would warrant an inference of such relinquishment or the intentional doing of an act inconsistent with the claiming thereof.
At the time of the delivery of the deed and the check to the Title Company, the Hellers were without knowledge that the restrictions above adverted to would prevent them from constructing a single-family residence on the property involved. Their conduct was not such as would warrant an inference of relinquishment of the right to rescind the contract. The writing of the letter above referred to was not an act, in the light of the other facts, inconsistent with the subsequent assertion of the right to demand performance in strict compliance with the terms of the agreement.
It is therefore here held that the plaintiffs were not in a position on the date set for settlement, nor are they today in a position to comply with the terms of the agreement of sale to convey to the defendants Heller a title free from any restriction which would prevent the occupancy or use of a single-family residence site on said premises.
Judgment will therefore be entered consistent with the foregoing, for the defendants.