671 A.2d 208

ARISTOTLE CATSOUPHES, PLAINTIFF, v. ATEX ASSOCIATES, INC., PETER CALLAS, CONSTANTINE CALLAS, DEMITRI TEFARIKI, KATERINA NICHOLAS, DEFENDANTS/RESPONDENTS, AND SCOTT L. NICHOLAS, DEFENDANT/APPELLANT, AND LOUIS E. AMORATIS, ELENA NICHOLAS CELLA AND GEORGE K. STRATIS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted December 13, 1995—Decided February 27, 1996.

460

Before Judges STERN, WALLACE and NEWMAN.

Appellant *Scott L. Nicholas* submitted a *pro se* brief.

*Corcoran & Greene,* attorneys for respondent Atex Associates, Inc. (*Deborah L. Greene,* of counsel and on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

We granted leave to appeal to address defendant Scott L. Nicholas' challenge to an order of the Chancery Division entered on June 9, 1995. The order directed each of the shareholders of Atex Associates, Inc. to pay $20,000 to the receiver within two weeks. Any shareholder who made the payment would receive priority over a non-paying shareholder. Further, the order provided that if the entire $140,000 was not paid within two weeks, the custodial receiver could apply to the court for appropriate relief.

On appeal defendant Nicholas essentially contends that (1) the scope of the June 9, 1995 order is excessive in that it exceeds the bounds of the underlying action; (2) there is no justification for imposing personal liability on a shareholder; and (3) the court's assessment against him is disproportionately higher than the shares he owns in Atex. We hold that it was error to order defendant Nicholas to pay $20,000 to the receiver.

Plaintiff Aristotle Catsouphes filed a complaint against Atex Associates Inc., and its individual shareholders Peter Callas, Constantine Callas, Demitri Tefariki, Katerina Nicholas, Scott L.

Nicholas, Louis E. Amoratis, Elena Nicholas Cella and George K. Stratis, seeking to compel defendants to purchase his shares in accordance with the stockholders' agreement. Separate answers and counterclaims were filed by defendants. In the answer and cross-claim of defendants Callas and Tefariki, individually and on behalf of Atex, they sought the appointment of a custodian with full powers of the Board of Directors to manage the affairs of Atex pending dissolution. Defendant Nicholas, who had acquired his shares in Atex as a result of the death of Nicholas S. Nicholas,[1] also filed an answer.

On November 24, 1993, the Chancery judge entered an order appointing a custodial receiver for Atex. Paragraph 5 of the proposed consent order provided that:

> The services of the Receiver shall be paid by Atex, but if Atex shall not have sufficient funds to make such payments, then the services of the Receiver shall be paid as follows: one seventh by each of the stockholders of Atex who are parties to this action.

[Emphasis added].

The order had been agreed to and signed by Nicholas, only after he deleted the above underlined portion. The Chancery judge reinstated the underlined portion and noted that, "[t]his provision is reinstated by the Court despite [the] objection of some of the parties."

Thereafter, the receiver entered into various agreements with third parties to preserve and maintain Atex's property. The receiver entered into the agreements only after application to the Court and after notice and an opportunity to object was given to all parties. On May 24, 1995, the receiver filed a motion for an order compelling the shareholders of Atex to pay for any and all obligations incurred by Atex to date in the event that sufficient funds were not available from Atex. In support of the motion, an attorney in the receiver's law firm certified that as of April 1995 the balance in Atex's checking account was $5,242.28, and that on

---

[1] Upon Nicholas S. Nicholas' death, his 100 shares were transferred in equal shares to Elena Nicholas Cella, Katerina Nicholas and Scott L. Nicholas.

April 18, 1995, Encore Studios, a major tenant of Atex, had advised the receiver that it was going to terminate its lease as of June 1995. Further, it was noted that there was a mortgage on the Edgewater premises with principal due and owing of approximately $450,000, with monthly payments of $5,583.77, and that real estate taxes on the property amounted to $4,814.88 per month. The attorney further certified:

> Accordingly, due to the loss of Encore Studios, there will be no surplus funds for any and all items required to be performed on the property, since the rental received from Coffee Associates ... will necessarily be used to satisfy the monthly mortgage and real estate tax payments. The corporate obligations necessarily incurred to date include, but are not limited to, the separation of sanitary sewer and storm sewer project [$84,000], ... completion of the on-going Phase II Study [$10,436] and general repair of the Encore buildings to render them tenantable.
>
> . . . .
>
> legal fees [for the receiver] through April 1995 in the amount of $26,911.50.

In sum, the total obligations of Atex were approximately $109,347, and the receiver had insufficient corporate funds to pay them.

Plaintiff and defendants, the Estate of Peter Callas and Nicholas, opposed the receiver's motion. Nicholas filed an affidavit in opposition asserting that there is no basis to impose personal liability for any of the debts or obligations of Atex. After oral argument, the motion judge concluded:

> Now, the receiver's motion is to compel the shareholders to pay these expenses not only his or her own direct expenses but the debts that have been incurred by the receiver and his law firm ...
>
> So based on the earlier order that I entered on November 24, 1993 which said that the services of the receiver should be paid by Atex and if not sufficient funds then by the shareholders equally, based on that order the fact that there are no assets now except $5,000 in the bank and maybe a claim against [the tenant] Coffee Associates and therefore not sufficient funds in the corporation to pay these expenses, based on the fact that these are administrative expenses in the sense that the receiver has been entering into these agreements in order to preserve and sell the property, and finally based upon the fact that every time the receiver was to incur one of these obligations it was on notice to everyone, with the approval of the Court, and either with the expressed approval of the shareholders or implied approval by not objecting.
>
> Based on all of that, I'm going to grant the motion and order the shareholders to pay these expenses ...

The judge then ordered that each of the shareholders of Atex pay $20,000 to the receiver within two weeks.

Nicholas principally contends that there was no basis for the trial judge to "pierce the corporate veil" and to impose personal liability upon him for the debts incurred by the receiver in preserving and maintaining the corporation. Further, he asserts that when a corporation has insufficient funds to pay its actual or anticipated debts, other options, such as bankruptcy exist.

■ "We begin with the fundamental propositions that a corporation is a separate entity from its shareholders, ... and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State Dep't. of Envtl. Prot. v. Ventron Corp.*, 94 *N.J.* 473, 500, 468 *A.*2d 150 (1983) (citing *Lyon v. Barrett*, 89 *N.J.* 294, 300, 445 *A.*2d 1153 (1982)). However, in limited cases such as "fraud, injustice, or the like," courts may pierce the corporate veil to impose liability upon shareholders. *Lyon v. Barrett, supra*, 89 *N.J.* at 300, 445 *A.*2d 1153. The corporate veil may also be pierced and liability imposed upon individual shareholders by statute. *See Sendar v. State Dep't of Human Services*, 230 *N.J.Super.* 537, 550, 553 *A.*2d 1372 (App.Div.1989); *Ventron, supra*, 94 *N.J.* at 501–02, 468 *A.*2d 150. The justification for imposing personal liability upon a shareholder "is to prevent an independent corporation from being used to defeat the ends of justice, ... to perpetrate fraud, to accomplish a crime, or otherwise to evade the law,...." *Ventron, supra*, 94 *N.J.* at 500, 468 *A.*2d 150 (citations omitted).

■ We are satisfied that the traditional reasons advanced for the imposition of personal liability upon a shareholder do not apply to Nicholas. Moreover, Nicholas never agreed to the provision in the November 24, 1993 order providing that the shareholders would pay for the services of the receiver if Atex was unable to pay. The judge included that provision in the order without a hearing to resolve the disputed terms. Consequently, that order is not a basis for imposing personal liability upon Nicholas.

The receiver relies on *Foster v. Bay Front Land Co.*, 109 *N.J.Eq.* 569, 576–579, 158 *A.* 453 (E. & A.1931), in urging affirmance of the order under review. *Foster* held that the receiver's compensation for costs and expenses could not be attached as a lien above that of the recorded mortgage loans at issue. *Id.* at 579–80, 158 *A.* 453. In *dicta*, the Court cited *Pomeroy's Equity Jurisdiction* § 1665 (4th ed. 1941), for the proposition that "where the funds in the hands of the receiver are insufficient to meet the allowance for compensation and costs, the balance may be directed to be paid by the parties at whose suit the appointment was made...." *Id.* at 579, 158 *A.* 453. While *Foster* was concerned with the payment of the receiver's fees and costs at the conclusion of the proceeding, *id.* at 573, 158 *A.* 453, more than that is involved in the present case. Here, the receiver sought payment by the individual shareholders of various obligations incurred on behalf of the corporation. Further, Atex is not in liquidation and the receivership is continuing. Thus, *Foster* may be distinguished on its facts.

However, even if the *dicta* in *Foster* were followed, it is premature to impose such liability now. Rather, its application should be limited to a situation where the assets of the dissolving corporation are insufficient to pay the receiver's fees and costs. There is no evidence of that here. Atex's assets have not been liquidated. On paper, the assets of Atex exceed its liabilities. If liquidation should occur, that would be the occasion to determine if Atex's assets are insufficient to meet the receiver's fees and costs, and if so, what the remedy should be.

Contrary to the receiver's contention, *N.J.S.A.* 14A:14–20, allowances to receiver and others, is not authority for the imposition of personal liability upon the shareholders for the receiver's expenses and fees. Rather, this section merely provides for the allowance of the receiver's costs and expenses, but does not designate the source for such payment.

The receiver also argues that the stockholders' agreement dated January 1, 1972 provides a basis for the imposition of

shareholder liability and points to a provision in the stockholders' agreement which relates to personal liability in regard to purchasing the stock of a deceased stockholder. Paragraph 3(e) of the agreement provides:

> If the corporation shall not have sufficient surplus to permit it lawfully to purchase all of such shares of capital stock, the decedent's personal representatives and the surviving stockholders shall promptly take such measures to vote their respective holdings of the shares of capital stock to reduce the capital of the corporation or to take such other steps as may be appropriate or necessary in order to enable the corporation lawfully to purchase and pay for all the decedent's shares of capital stock, including, by way of illustration, not by way of limitation, an up-to-date appraisal of the assets of the corporation. If the corporation shall nevertheless be unable or refuse to purchase all of the decedent's shares of capital stock, the obligation of the corporation with respect to the shares which the corporation shall be unable or refuse to purchase shall be deemed assumed by the surviving stockholders.

[Emphasis added].

This provision applies to the death of a stockholder and provides that the surviving stockholders shall assume the corporate obligation to buy back shares if the corporation is unable or refuses to do so. We find no basis to apply this provision to impose personal liability upon a stockholder for corporate debts incurred by the receiver.

We find no merit to the receiver's remaining arguments in support of the order below. *R.* 2:11–3(e)(1)(E).

We reverse that portion of the order that required Nicholas to pay the receiver $20,000 as his share of the expenses sought by the receiver and remand for further proceedings.

We do not retain jurisdiction.