This is a suit to annul or reform a deed dated February 5th, 1940, made by complainants to their son Stanley. Besides the son, the couple have two daughters, Mrs. San Jiacamo and Mrs. Inboden. Stanley Blachowski has been a member of the Irvington police force since 1931. Married in 1936, he and his wife lived with his parents until 1938, when they moved to their own home. The complainants, of Polish origin, speak English, but Mrs. Blachowski cannot *Page 426 
read that language and her husband reads it only with difficulty. At the time of the transaction in question, he worked in the factory of Specialty Leather Products Company, which was managed by one Bruno Berk, a member of the bar.
Blachowski owned property on Mt. Vernon Avenue, Irvington, 85 feet front by 400 or so feet deep, encumbered by an H.O.L.C. mortgage and a second mortgage held by a building and loan association. On one side of the lot toward the street is the small house where he and his wife were living. Early in 1940, Blachowski asked his employer, Berk, to draw wills for him and his wife. Each desired that the one who died first should leave his or her property to the other; that the house and the lot on which it stands would go eventually to the son Stanley and the adjoining lot to the daughters. They wanted Stanley to have the house after their deaths but the old folks were to have the right to live there as long as they lived. They also intended that Stanley should know of the provision for him and hoped it would influence him to come and live with them and bear part of the carrying charges of the house. There was, however, no bargain on the subject.
The lawyer prepared a will for each complainant, giving everything to the other, and providing in the event the other should be the first to die, all should go to the daughters. There is no mention of the son in the wills. Berk, however, at the same time, prepared a third instrument, the deed in question, conveying to Stanley the house and lot, 40 feet front. The deed embodies full warranties; also a clause whereby the grantee assumed the mortgages and all unpaid taxes. The deed contains this unusual sentence: "This conveyance is made with the following covenant and condition: That the second party cannot sell, convey, mortgage or encumber the tract herein conveyed during the lifetime of the parties of the first part without the written consent of the party of the first part."
Blachowski and his wife, with Stanley, called on Berk at the factory to execute their wills. They signed the wills and the deed as well, although they did not understand that *Page 427 
it gave Stanley immediate and sole title to their home. They thought it would operate so that Stanley would have the house after their deaths and that they would have the right to live there as long as they should live. Stanley knew that they so understood. If he grasped the real effect of the deed, he kept his knowledge to himself. "I explained," Berk testifies, "that that was the way I would do it," to accomplish complainants' purposes. After the deed was recorded, it was returned to Berk, pursuant to his direction, and was retained by him, although he furnished a copy to Stanley. Complainants did not see the deed or a copy of it after they had signed it, until trouble with Stanley started last fall.
First, the question of delivery of the deed. A deed is inoperative and passes no title unless it is delivered by the grantor and accepted by the grantee. An essential element of delivery is the intent of the grantor that the deed shall become immediately effective as a conveyance in accordance with its terms. Even if there be a physical handing over of the document by the grantor to the grantee, the deed does not become operative if the grantor expects it to be returned to him and not to become effective until a final delivery after his death. Rowley v.Bowyer, 75 N.J. Eq. 80; Rennenbaum v. Rennenbaum, 78 N.J. Eq. 427; 79 N.J. Eq. 654; Watson v. Magill, 85 N.J. Eq. 592. In the case before me, there was never any actual delivery of the deed to Stanley. The complainants, having signed, left the instrument in the custody of their own agent, Berk, and while Berk later gave Stanley a copy, he kept the original himself. It is true that Berk had the instrument recorded in the register's office. Although the recording raises a presumption of delivery, recording does not, of itself, constitute delivery unless, under the circumstances, the register of deeds may be deemed the agent of the grantee. 26 C.J.S. 245. McGraw v. McGraw (Me.),9 Atl. Rep. 846; Ackman v. Potter (Ill.), 88 N.E. Rep. 23.
Since Berk evidently arranged with the register so that he himself would get the deed back after it was recorded and that it would not be surrendered by the register to Stanley, the register cannot be regarded as Stanley's agent. *Page 428 
The evidence is persuasive that complainants did not intend the deed to operate as a present conveyance to Stanley. The failure to give him the deed is one indication. Again, complainants remained in sole possession of the property while Stanley continued to live in his own home. They continued to pay the installments of principal and interest on the mortgages, although by the words of the deed Stanley assumed those obligations. There is no satisfactory proof of who paid the taxes from time to time after the date of the deed. But whoever did, paid them not only on the house which stood in Stanley's name but on the vacant lot which remained in Peter's name. The clause in the deed restricting the sale or encumbering of the property until after the grantor's death is another indication that the complainants did not intend to surrender all right and title immediately. I find that the deed was never delivered and never took effect and that title is still in complainants.
The same result may be reached on the ground of mistake. No consideration was paid for the conveyance. It was a voluntary settlement, if it was anything. Since the grantors had no intention to vest in Stanley, the immediate right to the exclusive possession of the property and did not understand that the deed would have that effect, the deed should not be permitted to stand. That the mistake was one of law, is no obstacle to relief. Morris and Essex Railroad Co. v. Green, 12 N.J. Eq. 165; 15 N.J. Eq. 469; Nazarro v. Globe and Republic InsuranceCo., 122 N.J. Eq. 361; 127 N.J. Eq. 279. An essential of a gift is the donor's intention to give the particular thing and the estate therein which make up the subject-matter.
Of course, the complainants must do equity in order to receive equity. If Stanley, in good faith and in the belief that he was owner of the property, made improvements or reduced the liens, he should be recompensed. On October 1st, 1940, eight months after the date of the deed, Stanley, his wife and their babies, moved to complainants' home. Thereafter, they occupied the main part of the house and complainants took quarters in the basement. Stanley agreed *Page 429 
to pay in lieu of rent, the monthly installments of $52 on the H.O.L.C. mortgage, and he actually did make these payments. The amount was a reasonable rent and Stanley is not entitled to the return thereof. In 1942, he aided in building a sun porch and vestibule, and also set out some evergreens and shrubs. The value of his contribution I find to be $500. He and his wife will be decreed to reconvey the property to his father, upon the latter tendering to him the sum of $500, less the taxed costs in this case, which will be charged against the defendants. In finding the facts, I have given little weight to the testimony of Stanley, since observation of him on the stand and study of his evidence has led me to conclude that he is unworthy of belief.