PERRY E. BOVE'S EXECUTOR *v.* MARIE H. BOVE ET ALS.

(70 A2d 562)

November Term, 1949.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and BLACKMER, JJ.,
and CHASE, Supr. J.

Opinion filed January 3, 1950.

*Lawrence & O'Brien* for defendant Marie H. Bove.

*Bloomer & Bloomer* for defendants Louis and Antonetta Ricci.

*Bove, Billado & Dick* for defendants Amelia B. Beardsley, Viola B. Welch, Peter Bove, Harmond Bove, Aurelio Bove and Elmerine B. Bove.

*Vernon J. Loveland* for plaintiff individually and as executor of Perry E. Bove's Estate.

SHERBURNE, C. J. The findings of fact show the following: Perry E. Bove died testate on July 7, 1944. He left surviving him

his widow, defendant Marie H. Bove, his mother, Antonetta Ricci, and his step-father, Louis Ricci, both defendants herein, and six brothers and sisters, one of whom was named Elmerine, hereinafter called the intervenors, who with the Riccis take remainder interests under Perry's will. The will nominated Philip B. Billings as executor, and Angelo J. Spero as substitute executor. Billings was commissioned as executor by the Probate Court, and served as such until he resigned on July 29, 1948. On May 14, 1948, Spero was appointed by the Probate Court to act in conjunction with Billings, and has acted as sole executor since the resignation of Billings.

In 1914 Louis Ricci acquired a piece of land about 10 rods square located on the north-west corner of West and Pine streets in the City of Rutland. In 1937 there was a garage on the corner, now known as the Goodrich building, and two tenement houses thereon. Perry Bove was at that time conducting a beer distributing and soda bottling business, and was renting one-half of the garage and a small office. During that year the tenement houses were torn down, and a large warehouse, especially equipped for Perry's business, was erected thereon at a cost of $20,000 to Perry. After the erection of this building Perry conducted his business there until his decease, and the representatives of his estate have continued the business since then. It is at No. 7 Pine Street. On or about July 22, 1937, Louis Ricci and Perry Bove duly executed and acknowledged an instrument called therein a "Lease", which so far as here material reads as follows:—

> "That for the consideration hereinafter set forth and reserved, he, the said Louis Ricci hath and by these presents doth hereby demise and lease unto the said Perry Bove certain premises, lying and being in the City of Rutland, in the County of Rutland and described as follows:—
>
> "The storage house property heretofore used and occupied by said Lessee for the operation of his wholesale license together with the new ware house property which is fifty (50) feet in breadth and ninety (90) feet in length recently erected on said premises, all of which is described as follows: * * *
>
> "To have and to hold the aforesaid Premises, with all the privileges and appurtenances thereof to the

said Perry Bove, his Executors, administrators and assigns, from the first day of August, A. D. 1937, for and during such a period of time as said Lessee shall desire said tenancy to continue and shall pay unto said Lessor the rental hereinafter specified and hereby agreed to herein and shall faithfully perform all other conditions herein set forth; and this lease shall not terminate until such a time as said Lessee gives and delivers unto said Lessor a three (3) month's written notice setting forth his desire to terminate same, whereupon at the end of said three (3) months written notice then and in that event this lease shall thereupon terminate.

"In Consideration Whereof, the said Perry Bove doth hereby agree to use and manage said premises in a good husbandlike manner, and will pay to the said Louis Ricci, his Executors, Administrators or assigns, as RENT, the monthly sum of two hundred fifty (250) dollars, during the natural life of said Louis Ricci and his wife, Antionneta Ricci, or the survivor of them, but after the decease of both aforesaid parties, then in the event that said lease is not then terminated, it is hereby agreed that the monthly rental of said premises shall thereupon and thereafter be reduced to the annual rental of one thousand (1,000) dollars.

"And Whereas, said Perry Bove has paid out the sum of twenty thousand (20,000) dollars in the erection of the new warehouse situated on the east side of said premises bordering Pine Street, so-called, and whereas, said Louis Ricci is indebted to said Perry Bove in the amount of twenty thousand (20,-000) dollars in consideration for the money therein invested by said Perry Bove in the building and erection of said warehouse on said premises as aforesaid, it is hereby agreed that said rent of one thousand (1,000) dollars annually to accrue after the decease of said Louis Ricci and Antoinette Ricci or the survivor of them shall be applied to the payment of said twenty thousand (20,000) dollars, and after said payment to said Perry Bove of said twenty thousand

(20,000) dollars, in rent as aforesaid, then all rent thereafter shall be paid to the estate of said Louis Ricci, at the rate of one thousand (1,000) dollars Annually during the life of this lease.

"And at the expiration of said lease, the said Perry Bove will deliver up the possession of said premises to the said Louis Ricci, his heirs and assigns, without let or hindrance, in as good condition as they now are, ordinary wear and accident excepted. And, in case said premises should be destroyed by fire or other unavoidable casualty, before the expiration of this lease, this lease shall thereby terminate.

"Provided, Always, That if it should so happen, That the said Lessee shall at any time fail to perform any of the stipulations of this agreement on his part to be done and performed, then and in that case it shall be lawful for the said lessor, his heirs and assigns forthwith to re-enter and repossess the premises hereby demised anything therein to the contrary thereof notwithstanding."

This was duly recorded in the land records. On July 23, 1937, Louis Ricci and Perry Bove duly executed and acknowledged another instrument, giving Perry an option to purchase the above property after the death of Louis and his wife for the sum of $5000, less rentals paid after their decease. On September 23, 1937, through the medium of a third party deeds were executed purporting to vest title to Louis's real estate on Pine and West streets in Louis and his wife, and the deeds were duly recorded.

Perry Bove entered the service of the United States in World War II on April 2, 1942. At or prior to this date Louis Ricci and his wife executed and acknowledged a warranty deed of the warehouse property to Perry. This deed and the acknowledgment were undated. It will be hereafter referred to as the undated deed. Findings 17, 18, 19 and 20, so far as here material read as follows:—

"17. About the time this deed was executed Perry and Louis had a talk and Perry told Louis, in substance, that if he, Louis would give him a deed of the premises where the warehouse was located it would

save going through probate court, and if Louis and Perry's mother, Antonetta, passed away, he, Perry, could use it and get it recorded.

"18. On April 2, 1942, when Perry entered the service Louis and Antonetta signed the following papers:

'The undersigned hereby acknowledge that all rent due to date under lease of the premises at 7 Pine Street from Louis Ricci and Antoinette Ricci, lessors to Perry E. Bove, Lessee, dated July 22, 1937, is paid in full.

 Dated this 2nd day of April, 1942
 Louis Ricci
 Antonetta Rici.'

(Plaintiff's Exhibit 7)

'The undersigned hereby acknowledge that all rent due to date under lease of the premises at 7 Pine Street, from Louis Ricci and Antoinette Ricci, lessors to Perry E. Bove, lessee, dated July 22, 1937, is paid in full.

 Dated this day of , 19
 Louis Ricci
 Antonetta Rici.'

(Plaintiff's Exhibit 8)

Perry requested Louis to give him said papers and at that time said something to Louis about owing so much rent and asked what could be done about it. After plaintiff's exhibits 7 and 8 were signed Louis gave them to Perry. Louis had such confidence in Perry that he would sign anything that Perry asked him to sign.

"19. During the latter part of April, 1942, Marie H. Bove saw the undated deed * * * and the releases, plaintiff's exhibits 7 and 8 in Perry's safety deposit box in the bank, to which box she had a key. About that time Perry told her if anything happened

to him to go to Ernest H. O'Brien and have the date inserted in the undated deed and undated release as of the day previous to his, Perry's decease. Marie never took them to O'Brien * * *. Marie learned of the lease from Louis to Perry * * * from Perry and he told her about it when he gave her the instructions about having the date inserted in the undated deed and undated release. Billings was told about the undated deed in January, 1945, at a conference between Marie, Mr. Lawrence and Billings.

"20. Perry went to the office of George F. Jones, Esq., an attorney in Rutland, in May 1943, when he, Perry, was home on a furlough and asked him to make a deed from Louis and Antonetta to him, Perry, and to Perry's wife of the property located at 7 Pine Street. At the time he informed Jones that the title to the land on which the warehouse was built was still in the names of Louis Ricci and wife. He told Jones he wanted the deed made before he went overseas and that he had erected a plant on the land at a cost of $20,000.00. Jones was to prepare the deed, and have it signed. Jones later went to the premises and paced off the size of the land to be conveyed and described in the deed. He saw Elmerine in the office at the plant at that time and told her what he was there for. He later prepared the deed and took it to the home of Louis and Antonetta. He told them he had a deed prepared at Perry's request and explained it to them and that it was a deed from them to Perry and his wife. They, Louis and Antonetta, informed Jones that they knew he was coming. While Jones was there, and in his presence, it was properly executed and acknowledged on June 15, 1943. The next day, Jones took it to the City Clerk's office in Rutland and left it for record. * * * It was returned to Jones after recording. Elmerine paid Jones for his services as attorney for Perry by check from the business."

This was a deed of the warehouse property, plus a right of way over the grantors' remaining property. It was marked Plain-

tiff's Ex. 9. Findings 22, 23, 24, 25 and 26, so far as here material read as follows:—

> "22. I am satisfied and find that Louis and Antonetta understood the deed, plaintiff's exhibit 9, and knew what they were signing, what property was described and conveyed, and to whom it was being conveyed at the time they signed the same. At that time Louis understood where property stood in the name of himself and Antonetta that if he died the property would belong to Antonetta. He understood that where property stands in the name of husband and wife by deed, if one dies that the property belongs to the other.

> "23. Louis and Antonetta received no money or other consideration at the time they signed either the undated deed * * * * or the dated deed, plaintiff's exhibit 9.

> "24. Louis heard nothing from Perry about the undated deed after it was signed and had forgotten about it when he and Antonetta signed the dated deed, plaintiff's exhibit 9.

> "25. Marie * * * * did not know of the (dated) deed or its execution until told about the deed by Perry in the latter part of June, 1943. At that time, when she and Perry were living in Indiana, he, Perry, told Marie that he had received word from home that the deed was all straightened out and he had a deed to the warehouse property, and that if anything happened to him, it would belong to Marie. She never saw the deed until she found it in the safety deposit box in the bank at some time subsequent to its execution and prior to May, 1944, after Perry had gone overseas. * * * *

> "26. Marie never told any of the parties about what Perry told her about the undated deed or the dated deed. Spero never knew of the undated deed until it was produced in court during the progress of the hearing."

Beginning in August, 1937, Perry regularly paid rent for the warehouse property to Mr. and Mrs. Ricci, but in amounts less

than the rent called for. These payments continued after the execution of the undated deed and after the execution of the deed of June 15, 1943, while Perry was in the service, and were made by his bookkeeper, whom he instructed to pay the rent and charge it to the business, and he told Louis Ricci to get the checks for rent from her. After Perry's death rent continued to be paid for a time by the direction of Mr. Billings, his executor.

After Perry died Louis filed a large claim against his estate for back rent. At that time he made no claim of ownership of the warehouse property. After this claim was filed, Marie employed an attorney and a dispute arose over the rights of the various parties in the property, and she discussed the dated deed with Mr. Billings, the executor. In 1946 she had a talk with him about paying rent for the property, and he agreed to do so, and rent from Perry's death was paid in full to sometime in June or July, 1948. On June 28, 1948, Marie notified the executors in writing that their tenancy of the property would be terminated at the end of the monthly period July 31, or August 1, 1948. On July 21, 1948, Louis notified the executors in writing that they might continue to occupy the property as long as they wished under the terms of the lease to Perry, or he would negotiate a new lease with them if they desired. On August 7, 1948, Marie brought a suit in ejectment against the executor and the Riccis to recover the property. On September 23, 1949, the Riccis brought a suit in ejectment against Spero, individually and as executor of Perry's estate. The executor then brought this proceeding against Marie and the Riccis, and the ejectment suits were enjoined. The remaining findings so far as here material read as follows:

> "39. The defendant Marie H. Bove has title to the real estate located at 7 Pine Street by virtue of and as described in the deed from the defendants Louis and Antonetta Ricci to Perry E. Bove and Marie A. Bove, dated June 15, 1943, * * * *
>
> "40. The title of Marie H. Bove to such premises is subject to the rights of Louis and Antonetta Ricci therein by virtue of the lease and agreement between Louis Ricci and Perry E. Bove, dated July 22, 1937, * * * * Such lease and agreement was valid and in force as against the said Marie H. Bove and Perry

prior to the decease of Perry and against the said Marie H. Bove since the decease of Perry.

"41. The plaintiff Angelo J. Spero, as executor of the estate of Perry E. Bove, has such right in the premises as accrue to him as representing the estate of Perry E. Bove by virtue of the said lease and agreement between Perry and Louis, and such lease and agreement was valid and in force as against Louis prior to the decease of Perry and since his decease.

"42. The undated deed from Louis and Antonetta Ricci to Perry E. Bove, * * * * was not valid and of force at the time of Perry's decease and none of the parties or the estate of Perry, or his heirs or legatees, have any rights in and to said premises under or by virtue of said deed."

The decretal order, so far as here material, carries out findings 39, 40, 41 and 42 in detail, and directs the discontinuance of the two ejectment suits and forbids any other or further action to recover possession of the leased premises so long as the lease shall be valid and in force. The cause has been brought here upon the exceptions of Marie Bove and upon the exceptions of the brothers and sisters, intervenors.

The intervenors except to finding 42 as a conclusion of law unsupported by the prior findings, and assert that, upon the facts properly found, the undated deed conveyed the property therein described to Perry Bove in fee simple absolute not later than the latter part of April, 1942, as a matter of law. Finding 42 is plainly a conclusion of law, and the chancellor has not stated upon what grounds he finds the undated deed to be invalid. Since this finding is a conclusion of law, the previous findings are to be construed to support it if this can be reasonably done; and we must assume in its favor that the chancellor inferred such facts from the other facts certified as he ought to have done, or fairly might have done; and we do not for the purpose of sustaining the exception thereto read into the findings something which is not there, and which is not a necessary inference from the other facts found. *Abatiell* v. *Morse,* 115 Vt 254, 259, 56 A2d 464, and cases cited.

The operative effect of this deed is in no way affected by the fact that it is undated. 16 Am Jur, Deeds, § 55. Nor is it

defeated because the acknowledgment is undated. *Galusha* v. *Sinclear,* 3 Vt 394, 397.

 The parties disagree as to whether the necessary inference from the facts found is that the undated deed was delivered. A deed does not take effect until it is delivered. To constitute a delivery of a deed the grantor must part with the custody and control of the instrument permanently, with the intention of having it take effect as a transfer of title, and must part with his right to the instrument as well as with the possession of it. The intention of the grantor is a controlling factor, and it may be manifested by acts, or words, or both, and it is always a question of fact and to be determined as such, unless the proof is such that a necessary inference arises therefrom, in which case it is a question for the court. *In Re Estate of Braley,* 85 Vt 351, 82 A 5; *Rich* v. *Wry,* 110 Vt 307, 311, 6 A2d 7; *Dwinell* v. *Bliss,* 58 Vt 353, 5 A 317. The mere possession of the deed by the grantee, although, if nothing more is shown, a delivery will be presumed, does not determine that there has been a delivery of it. It depends upon whether such possession has been acquired with the intention of the grantor that he should receive it as an executed deed to take effect forthwith. *Dwinell* v. *Bliss, supra.* The grantor's intent may be directed to delivery of the deed, from which the conclusion of law will follow that the property passed to the grantee; but it is evident that if the grantor intended to transfer present title to the property, he must have intended to deliver the deed, and that he could not have intended delivery if the property was not to pass immediately. Therefore, the inquiry is simplified by asking, did the grantor intend the property to pass? The rule that where a deed is delivered to the grantee, but upon condition, the delivery is good but the condition is a nullity, has no application where the circumstances negative any intention to deliver the deed even conditionally. 16 Am Jur, Deeds, §§ 116, 124.

In *Chaudoir* v. *Witt,* 170 Wis 556, 170 NW 932, 174 NW 925, Fred Witt, Sr., owned certain property in Milwaukee which he wished his wife to have in case of his death. To effect that purpose he had a deed drawn from himself to a scrivener and a deed from the scrivener to Lina Witt, the grantor's wife. The scrivener delivered both deeds to the grantee, Lina Witt, upon the understanding that they should not be recorded until after Witt's death and that until he died the property would be held by Witt. Witt

was ill at the time, but subsequently recovered, and the land was assessed in his name thereafter, and he made repairs and improvements, and collected rents. Mrs. Witt died first. After his death devisees of Mrs. Witt asserted title to the property, but one of Witt's heirs resisted the claim on the ground that the deeds had never been delivered. In holding that there had been no delivery the court there said: "A deed is of no effect until delivered; the delivery may be by actual tradition of the document to the grantee or to some third person for him, or it may be by other acts deemed in law to amount to the same thing, but in either case there must be the intent presently to pass the title; the manual possession of the instrument by the grantee creates a presumption of delivery, which, however, may be overcome by evidence showing that the possession came about without intent to pass title but to accomplish some other purpose; a secret intent on the part of the grantor that title shall not pass when the deed is manually given into the possession of the grantee, will not prevent the passing of the title, but, if the intent on both sides be that the deed shall serve merely as a testamentary document and is to remain subject to the grantor's control and not take effect during his lifetime, it will not pass title, even though physically handed to the grantee."

In *Coles* v. *Belford*, 289 Mo 97, 232 SW 728, 729, 731, the grantor gave to the grantee named therein a deed, saying, "You take this and put it in your box and keep it and whenever anything happens you send it to Springfield, Mo., and have it recorded". Referring to that the court said: "True, by this delivery it may be said that Mrs. Phelps parted with dominion over the deed. However, when she said 'whenever anything happens you send it to Springfield, Mo., and have it recorded,' that language indicates that it was her intention that the deed was not to become operative until her death. * * * * Accordingly, upon authority of the adjudicated cases, the instrument was testamentary in character, did not pass a present interest in the property to the grantee, and hence was not good as a deed, notwithstanding the intention of Mrs. Phelps that it should take effect at her death." In this case the subsequent attempt of the grantor to sell the property, and her management and control of it as evidenced by her renting of the same, insuring it in her name, paying taxes and making repairs thereon, were further indicative of the fact that it was not

her intention that the deed should take effect and pass title as a present transfer.

In *Kenney* v. *Parks,* 137 Cal 527, 70 P 556, there was no legal delivery although the deeds were placed in the possession of the grantee, if the understanding between both grantor and grantee was that the deed was to have effect only upon the contingency of the death of the grantor before that of the grantee.

▮ In a transfer of realty by deed, it is essential that grantor and grantee shall understand that the conveyance is complete, and that the title is to pass, in order to have the mere placing of it in the hands of a grantee construed as a complete delivery. *Bremyer* v. *School Assoc.,* 86 Kan 644, 122 P 104.

▮ Even though there has been a manual delivery of the deed by the grantor to the grantee, the subsequent conduct of the parties, inconsistent with an absolute delivery, can be considered. *French* v. *Dillon,* 120 W Va 268, 197 SE 725.

▮ There is no such legal delivery of the deed as to pass title to the grantee, where, although the deed is placed in the possession of the grantee, the understanding is that the title is to pass only upon the contingency of the death of the grantor before the grantee. *Hood* v. *Nichol,* 236 Ky 779, 34 SW2d 429.

It is stated in *Seibert* v. *Seibert,* 379 Ill 470, 41 NE2d 544, 547, 141 ALR 299, that "placing a deed in the hands of a grantee does not constitute delivery where it is shown the intention of the parties was that it was not to become operative immediately and where such intention is evidenced by continued acts of ownership and operation."

Along this same line of reasoning see *Buchwald* v. *Buchwald,* 175 Md 115, 199 A 800; *Hotaling* v. *Hotaling,* 193 Cal 368, 224 P 455, 56 ALR 734; *Burke* v. *Burke,* 141 SC 1, 139 SE 209, 56 ALR 729; *Schlicher* v. *Keeler,* 67 NJ Eq 635, 61 A 434; *Watson* v. *Magill,* 85 NJ Eq 592, 97 A 43; *Blachowski* v. *Blachowski,* 135 NJ Eq 425, 39 A2d 94.

In view of what is stated in findings 17, 18 and 19 relative to the understanding of Louis and Perry, the apparent intentional omission of the date from the deed and acknowledgment, and the undated receipt for rent given at about the same time, and Perry's instructions about filling in these dates, under the circumstances that Perry was about to enter the service of his Country from which he might never return alive, and also in view of the contin-

ued payment and acceptance of rent, of Perry's understanding the next year that the title to the warehouse was still in the names of Louis and his wife, and, although Louis had forgotten about the undated deed, he and his wife understandingly executed the deed of June 15, 1943, to Perry and his wife, as shown in findings 20 and 22, and that no consideration was paid for either deed, we think that the chancellor could fairly and reasonably infer that Louis and his wife did not intend that Perry should receive the undated deed as an executed deed to take effect forthwith, and did not intend the property to pass immediately, and that Perry knew that they did not so intend, and that consequently there was no effective delivery. The facts are not such that a necessary inference of delivery arises. The exception to finding 42 is not sustained.

Under their exceptions to findings 39, 40 and 41, which are also conclusions of law, the intervenors claim that the lease is what is known as a "perpetual lease" and, therefore, that Perry Bove took under it a determinable fee or a fee upon condition, and that if a determinable fee the only interest that passed to Marie Bove under the deed dated June 15, 1943, was a possibility of reverter, and that if a fee upon condition Louis Ricci could not transfer the right of reentry, and that the deed did not transfer the rent.

A perpetual lease with power to reenter for the non-payment of rent passes a conditional fee, and until reentry the grantee, his heirs and assigns, are in lawful possession and their estate continues. Moulton J. in dissenting opinion, *University of Vermont and State Agricultural College* v. *Ward,* 104 Vt 239, 267-272, 158 A 773, and authorities cited. This was so at common law when the habendum contained words of inheritance. But the doctrine of the common law that the absence of the word "heirs" caused the estate, though expressed to be in perpetual duration, to be one for life only, has been from the earliest times in this State considered to be a rule of construction only and not of positive law. The intention of the parties, as gathered from the instrument taken as a whole, is to govern. Dissenting opinion, *supra,* and cases cited.

In *Ocean Front Improvement Co.* v. *Ocean City Gardens Co.,* 89 NJ Eq 18, 103 A 419, a lease to a corporation, its successors and assigns, so long as a stipulated rent should be paid was held

to be in substance a transfer in perpetuity on condition subsequent in the nature of a rent charge, since the instrument, although in name and general form a lease and containing words appropriate for the creation of a leasehold estate, lacked the essential and distinguishing qualities of a lease, there being no reversion, and the term being unlimited as to time, because the non-payment of rent was an event which might never happen. In Rest. of Property, § 21, Comment a, it is stated: "When land is so transferred that it is held at the will only of the transferee the estate created is not an estate at will. It is either an estate for the life of the transferee or an estate in fee simple determinable dependent upon whether the required words of inheritance, if any are required for the creation of an estate of inheritance, are present." The illustration given is this: "A makes an otherwise effective conveyance inter vivos of Blackacre to B and his successors to hold so long as he and they desire. In a state in which words of inheritance are necessary to the creation of an estate in fee simple, B has an estate for life. In a state in which such words are not necessary, B has an estate in fee simple determinable." From the foregoing it is clear that the lease conveyed either a freehold for life determinable or a fee simple determinable.

The instrument is called a "Lease". It refers to Perry Bove as lessee and Louis Ricci as lessor. It contains apt words for a lease, with specific rights and duties as between the parties, and provides for termination, reentry and repossession. The habendum is to Perry, his executors, administrators and assigns, which at common law would at the most convey a life estate. It only uses the word "heirs" twice, in the paragraph relative to delivering up the possession to Louis, his heirs and assigns at the termination thereof, and in the paragraph giving Louis, his heirs and assigns the right of reentry. In these places the word "heirs" is used as at common law. In these respects there appears an intent to use the words "executors", "administrators" and "heirs" in the common law sense. The tenancy is to continue for such time as the lessee shall desire and shall pay the rent and until he gives the required notice. It is significant in this connection that there is no mention of heirs, executors or administrators, so that it may be said that these provisions are personal to Perry the lessee. The provisions for good husbandry and for surrendering the premises at the expiration of the lease in as good condition

as when leased, ordinary wear and accident excepted, are usual in a lease, and might properly be inserted in a life lease for the benefit of the remainderman, but are unusual in a conveyance in fee where there can be no reversion. The statement that Louis is indebted to Perry for $20,000.00 invested in the warehouse, and that certain rents should be applied in payment therefor, and the provision that, if the warehouse should be destroyed by fire or other unavoidable casualty, the lease shall terminate, imply that Louis retains the title. The provision for such termination would not be likely to be inserted if it was intended that Perry was to be the owner of the leased premises. Our conclusion from an examination of the whole instrument is that the parties intended the grant of a life estate at most. The rule that the instrument shall be construed most favorably to the grantee does not apply here. This rule is not applicable to any case but one of strict equivocation, where the words used will bear either one of two or more interpretations equally well. *Albee* v. *Huntley,* 56 Vt 454, 458.

■ If there were any doubt about our conclusion it would be resolved under the following rules applicable when the intent of the parties upon the face of the instrument is doubtful or the language used will admit of more than one interpretation: "While the language of a written instrument governs in determining its effect and operation, in construing such language the nature and condition of the subject matter, the purposes sought to be accomplished, and the circumstances in which the parties contract tending to throw light on their apparent intention at the time the instrument was executed, may be considered. *Stratton* v. *Cartmell,* 114 Vt 191, 194, 42 A2d 419, 421; *Kennedy, Admr.* v. *Rutter, Admr.,* 110 Vt 332, 339, 6 A2d 17; *Freeguard v. Bingham,* 108 Vt 404, 406, 187 A 801; *Vermont Shade Roller Co.* v. *Burlington Traction Co.,* 102 Vt 489, 502, 150 A 138, and cases cited. The practical construction placed upon the instrument by the parties may be considered, if necessary. *Vermont Shade Roller Co.* v. *Burlington Traction Co., supra; Vermont Kaolin Corp.* v. *Lyons,* 101 Vt 367, 377, 143 A 639; *Clark* v. *Mylkes,* 95 Vt 460, 463, 115 A 492. The findings show that at the time of Perry's death in 1944, Louis Ricci was 72 years old, and Mrs. Ricci, Perry's mother, was 62, so at the time of making the lease they were respectively 65 and 55. Perry's age is not given, but he must have been comparatively a young man with a long expectancy of life.

On the next day after the execution of the lease Louis and Perry executed the option for the purchase of the property. On August 17, 1937, less than a month after the date of the lease Louis and his wife gave a mortgage to a bank on the warehouse property to secure a note of Perry's. On September 22, 1937, all Louis' land at the corner of West and Pearl streets was through the medium of a third party deeded to Louis and his wife, subject to the lease. On September 8, 1941, Louis and his wife gave another mortgage upon this property to another bank. On or about April 2, 1942, Louis and his wife and Perry were parties to the undated deed, and they were later parties to the deed dated June 15, 1943. Taking into consideration also findings 17, 18, 19, 22 and 25 herein quoted, there can be no doubt that Louis and Perry by their conduct and talk did not think that the lease conveyed the fee, and so construed it. We hold that the lease conveyed only a life estate. These exceptions are not sustained.

Defendant Marie Bove excepted to findings 40 and 41 on the ground that they are not supported by the facts found. This exception must be sustained, except as to the validity of the lease during Perry Bove's lifetime, since the lease terminated at Perry Bove's decease, and thereupon all title to the property vested in Marie Bove under the deed of June 15, 1943. Since this holding gives her all that she seeks here, it is unnecessary to discuss her other exceptions.

The decree below left certain other issues undetermined, and the cause must be remanded for their adjudication.

*Decree reversed, and cause remanded for further proceedings not inconsistent with the views herein expressed, with directions that the injunction restraining Marie Bove from prosecuting her ejectment suit against Angelo J. Spero, Louis Ricci and Antonetta Ricci and the Colonial Beverage Co. of Vermont, Inc. be forthwith dissolved.*