## Fred Johnson et als. v. Town of Salisbury

[132 A2d 423]

February Term, 1957.

Opinion Filed May 7, 1957.

*Frederick A. Bosworth* for the defendant.

*Wynn Underwood* for the plaintiffs.

**Adams, J.** This is a petition for a declaratory judgment brought to the court of chancery for the county of Addison. The petition alleges that the plaintiffs are the successors and assigns, as lessee, to a lease dated March 3, 1890 of the town school lot, so-called, by and between the then selectmen of the town of Salisbury and Ansel W. Kelsey; that the present selectmen of the town have refused a tender by the plaintiffs of the annual rent specified in the lease and the plaintiffs are uncertain of their rights and status under the lease.

The prayer of the petition is for a determination and declaration; whether the lease is valid and enforceable; whether it is a perpetual or durable lease, so-called; whether the defend-

ants can cancel the lease and for general relief. The defendants filed an answer.

The case was heard on an agreed statement of facts. The chancellor filed findings of fact based solely upon the agreed statement. A decree was issued declaring that the lease is a perpetual and durable lease in full force and effect; that the plaintiffs are successors and assigns under the lease and have complied with its terms, conditions and covenants and by tendering a certified check of February 23, 1956 have complied with the terms of the lease for payment of the rent in advance.

■ The defendants are here on a general exception to the decree by which the only question raised is whether the decree is warranted by the pleadings and supported by the findings. *Laplante* v. *Eastman*, 118 Vt 220, 228, 105 A2d 265, and cases cited.

The material facts as shown by the agreed statement and findings are,—On March 3, 1890 the then selectmen of Salisbury executed the following written instrument purporting to lease the town school lot, so-called, in Salisbury to Ansel W. Kelsey or his heirs;—"Know all Men by these Presents. That we the Selectmen of the Town of Salisbury, do hereby covent (sic) or lease to Ansel W. Kelsey or his heirs, the Town School Lot in Said Salisbury, for and in consideration of the Sum of Twenty Dollars a year to be paid into the Town Treasury on the first day of each and every Succeeding year, to be paid in advance by the first day of March each and every year. Provided Nevertheless if the Said Ansel W. Kelsey or his heirs Should refuse or neglect to pay into the Town Treasury by the first day of March, each and every year, the Said Sum of Twenty Dollars. Then this obligation becomes Null and Void, otherwise to remain in full force:—

Given under our hands at Salisbury this 3rd day of March A.D. 1890.

John T. Cloyes ⎫
                ⎬ Selectmen
F. C. Atwood ⎭

Said agreement was duly recorded on March 3, 1890 in the Salisbury Land Records. The plaintiffs by certain mesne con-

8

veyances are the successors and assigns as present lessee to the aloresaid written agreement, being such by virtue of a quit-claim deed dated January 24, 1955, recorded in the Salisbury Land Records. The plaintiffs have complied with the terms, conditions and covenants set forth in the agreement dated March 3, 1890. On February 23, 1956, the plaintiffs tendered payment of the rent in accordance with the terms of the agreement for the ensuing year, by mailing a certified check for $20.00 to the lessor, the town of Salisbury. On March 1, 1956, the defendant selectmen refused the tender and returned the check with notice to the plaintiffs that the lease was cancelled and that the defendant selectmen were taking possession of the school lot for the town of Salisbury as of March 1, 1956.

No question is raised by the parties in regard to the original instrument of March 3, 1890 not being under seal, witnessed or acknowledged or in regard to the sufficiency of the tender of the rent, so we give those matters no consideration.

The instrument is apparently a "home made" one and could hardly have been more condensed and had any written instrument left. The plaintiffs in their brief treat it as a lease of so-called public or lease land, that is, of a lot originally set aside for the support of schools. The defendants in their brief say that the sole issue is whether the written instrument is a perpetual lease of public land. We, therefore, treat the land described in the agreement as "the Town School Lot" as one set apart as public or lease land for the support of the schools.

It seems proper to call attention to an excellent treatise on The Vermont Lease Lands by Walter Thompson Bogart, Professor of Political Science at Middlebury College, published in 1950 by the Vermont Historical Society, and particularly to Chapters IV, V and VI entitled "The Lease Lands and the Court: Durable Leases and Alienation. The Lease Lands and the Court: Other judicial Doctrines" and "The Lease Lands and the Legislature."

■ "Although there is no specific prohibition of complete alienation in our constitution or in any statute, it has been the law of this State from the earliest times that an attempted conveyance of the fee of public lands is void." *Jones* v. *Vermont*

*Asbestos Corporation*, 108 Vt 79, 94, 182 A 291, 298, and cases cited.

Probably the leading case in Vermont on the subject of conveyances of public or lease land is *University of Vermont & State Agricultural College* v. *Ward*, 104 Vt 239, 158 A 773. It is an exhaustive opinion and the Court in speaking of durable leases of our public lands said at page 264, "so many titles to our public lands are held under such leases, that we have considered the question in the hope that the true character of such leases may be settled for all times." The opinion was by a majority of the Court and Mr. Justice Moulton, later Chief Justice of this Court, dissented. We find that the majority opinion at page 252 took judicial notice, as a matter of common knowledge, that from the early days in this state the greater part of our public lands have been leased by "durable leases", that is, by leases reserving a rent payable annually, with the right of reentry for nonpayment of the same, and for the term "as long as grass grows or water runs" or equivalent terms.

In the same case at pages 253-254, we find that the authority of the selectmen to lease lands granted for the use of schools stemmed from an Act of the Legislature passed October 30, 1794 wherein it was provided, "It shall be the duty of the selectmen in the respective towns, in the name and behalf of such towns, if necessary, to demand, sue for, and recover the possession of such lands and the same to lease out, as long as water runs or wood grows; and annually at farthest, to collect the rents and profits of such lands, and the same pay in to the treasury of such town." The act as first passed provided that the term of the leases should not exceed fourteen years. On recommendation of the Governor and Council, it was amended and passed to provide that the land might be leased "as long as water runs and wood grows." This is the only act which specifically authorizes and empowers leasing such lands for that term. Thus it appeared to be the legislative intent that durable leases of such lands created the relation of landlord and tenant between the parties and were valid leases "on long terms" and not conveyances in fee.

The act of 1794 is now included in V. S. 47, sections 3619, 3620 and 3621. Section 3619 provides that the selectmen shall

have charge of lands in the town for various purposes including those granted to the town for the use of schools. Section 3620 pertains to the possession of such lands and actions for its recovery and protection and also for the recovery of damages for injury done to the lands. Section 3621 provides, "The selectmen may lease such lands as they deem beneficial, reserving rents which shall be annually paid into the treasury of the town." In 1890, when the lease in the instant case was made, these respective sections were R. L. 2703, 2704 and 2705 and have been carried forward in each revision since then without change.

From the foregoing history of the statute, it is apparent where the words, "as long as water runs and wood grows" that appear in what have been termed "durable leases" in this jurisdiction, originated. Sometimes the equivalent words "as long as grass grows or water runs" have been used in the leases. See *University of Vermont & State Agricultural College* v. *Ward, supra,* 104 Vt at 243, 158 A at 775; also *White* v. *Fuller,* 38 Vt 193, 200. In *Jamaica* v. *Hart,* 52 Vt 549, the lease from the selectmen contained the words, "as long as water might run and grass grow."

The plaintiffs claim that, although the instrument here in question does not contain the usual words, "as long as grass grows and water runs", the words, "to Ansel W. Kelsey or his heirs", are equivalent thereto. They cite and rely upon *Jones* v. *Vermont Asbestos Corporation, supra,* 108 Vt at 94, 182 A at 298. We find nothing in that case that supports such a claim. The words "or his heirs" are indicative of an attempt to pass a conditional fee rather than a lesser estate. Moulton J. in dissenting opinion in *University of Vermont & State Agricultural College* v. *Ward, supra,* 104 Vt at 267-272, 158 A at 784; *Bove's Executor* v. *Bove,* 116 Vt 76, 89, 70 A2d 562. But, as we have seen, in this jurisdiction such an attempted conveyance of public lands is void. *Jones* v. *Vermont Asbestos Corporation, supra,* 108 Vt at 94, 182 A at 298.

The agreed statement of facts and findings show that the plaintiffs have been and are presently engaged in the business of growing and marketing timber and the sale of lumber. They have leased, exclusive of the lot in question, some 700 acres of

timber tracts, all as a reservoir of growing timber for their business. They claim they had every reason to presume that the instrument in question, taken in connection with the long and uninterrupted chain of title as of record from March 3, 1890 to the date they acquired it on January 24, 1955, passed to them the perpetual possession of the premises so long as they complied with the terms of the agreement. They cite in support of this claim, *White* v. *Fuller, supra,* 38 Vt at 206 where this Court said, "Leases of short duration tend to discourage agricultural enterprise and improvement, and in the case of wild land are wholly impractical". This argument is not persuasive. This Court, in that case, was addressing its remarks to whether the instrument there in question should be construed as a lease or a conveyance in fee. There the instrument contained the words, "as long as grass grows and water runs" in the habendum clause. We cannot construe the instrument in the present case on what the plaintiffs say they presumed in regard to its terms.

We hold that the instrument under consideration here is not a so-called durable or perpetual lease of public lands as such leases have been defined from the early days in this jurisdiction.

■ As there is no term specified in the instrument and the rent is payable annually, the tenancy is from year to year. *Hall* v. *Wadsworth,* 28 Vt 410, 412; *Silsby* v. *Allen,* 43 Vt 172, 177; 51 CJS, Landlord & Tenant, §133, p. 731, note 8; 32 Am Jur, Landlord & Tenant, §71, p. 86, note 14.

■ In order to terminate a tenancy from year to year, so as to entitle the lessor to possession, or the lessee to exemption from the payment of rent, six months' notice of termination of the tenancy and looking to the end of the year is necessary. *Maniatty* v. *Carroll Co.,* 114 Vt 168, 169-170, 41 A2d 144, 156 ALR 1306, and cases cited. The notice to the plaintiffs by the selectmen on March 1, 1956 that they were taking possession of the lot for the town of Salisbury as of that date did not meet the necessary requirement.

*Decree reversed and cause remanded. Let a new declaratory decree be drawn and entered in accordance with the views expressed in this opinion.*