Jacobs et. al. v. Moffatt, No. 14-1-11 Cacv (Teachout, J. Mar. 3, 2014).

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Caledonia Unit** | **Docket No. 14-1-11 Cacv** |

**Burton Jacobs, Jr., et al,**
    **Plaintiffs**

    **v.**

**Michael Moffatt,**
    **Defendant**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This is a declaratory judgment action in which Plaintiffs seek a declaration of their interest in a hunting camp on a half-acre of land in Newark and a right of access to it, all in relation to property of Defendant, who owns the surrounding/underlying land and seeks a declaration of sole ownership and ejectment of Plaintiffs from the premises.  Plaintiffs are represented by Attorney Paul S. Gillies. Defendant is represented by Attorney Jennifer B. Colin.

The pertinent facts are largely undisputed, although the parties draw different inferences from certain facts.  In a Decision issued August 31, 2012, this Court (Judge Robert P. Gerety, Jr.) denied cross motions for summary judgment.  He analyzed the parties' legal arguments based on the undisputed facts before the Court, and concluded tentatively that the original instrument under which Plaintiffs' predecessors took possession did not create a tenancy at will, as argued by Defendant.  He was unable to determine from the facts presented the exact nature of the property interest created by the instrument, and denied both motions for summary judgment so that a hearing could be held in which additional facts could be developed.

A final hearing was held on January 24, 2014.

Facts

Based on the evidence admitted the Court makes the following findings of fact:

In 1940, James Howard, who owned a tract of land in Newark and is the predecessor in title to Defendant Michael Moffatt, signed an instrument with the following content (hereinafter the "1940 Lease") which was recorded in the land records:

This indenture, Made & entered into this 24th day of May A.D. 1940 by & between James Howard of Newark in the County of Caledonia & State of Vermont party of the first part & Wm Stewart, Elmer Carr, Geo Carr & Neil Ward of, Newark, Sutton & Hardwick, in the County of Caledonia party of the second part.

Witnesseth, That the said party of the first part in consideration of the rents, covenants & provisions hereafter contained to be paid done & performed by said party of the second part, hath let & doth hereby lease & demise unto the said party of the second part a certain piece of land situate in the town of Newark in the County of Caledonia & State of Vermont, described as follows:

In consideration of a certain sum paid to my full satisfaction, I lease them a certain piece of land, on which now stands a Hunting camp, said land to be ½ acre more or less, owned by Elmer Carr, Geo Carr, Wm Stewart & Neil Ward as long as it is maintained as a Hunting & fishing camp, but not to be let to any one for wood or lumber business. I also lease them the right of way through my yard & wood road as they have had to said camp, also the right of way to spring for water, the right of way to be a path, all gates to be opened & closed in a workman like manner.

When this camp is not kept as a sporting camp then this lease shall be null & void.

If camp should be burnt or destroyed we have the right to rebuild.

The instrument is hereinafter described as the "1940 Lease."

Plaintiffs in this case claim their interest in the subject property as successors to the grantees of this 1940 Lease: William Stewart, Elmer Carr, George Carr, and Neil Ward.

In 1961, the four grantees signed an instrument (hereinafter the "1961 Assignment") which was recorded in the land records. It starts with the title "Lease" and quotes in full, within quotation marks, the full content of the 1940 Lease set forth above and further continues with the following terms above the notarized signatures of all four persons:

We, Wm Stewart of Burke, Elmer Carr of Sutton, Neil Ward of Hardwick in the County of Caledonia and Geo. Carr of Westmore in the County of Orleans in the State of Vermont hereby transfer to Burton Jacobs, James Jacobs and Burton Jacobs, Jr. of Derby Line in the County of Orleans and State of Vermont, and Conrad Jacobs of Newport in the County of Orleans and State of Vermont for One Dollar and other valuable considerations all our right and title to the above lease with the same rights and restrictions as were conveyed to us by James D. Howard May 24th A.D. 1940 and recorded in Book 13, Page 403 Newark Land Records.

Of the four assignees, one, *Burton Jacobs, Jr.,* is a Plaintiff in this case and claims his interest pursuant to this instrument. The other Plaintiffs (whose names are in italics below) claim their interests from the three other assignees (whose names are underlined below) as follows:

Burton Jacobs: his heirs transferred their interests in 1971 to *Arthur Jacobs & Dennis Jacobs*;
James Jacobs: upon his death, his interest was transferred to his wife, *Elizabeth Jacobs;*
Conrad Jacobs: by will, he gave, devised, and bequeathed his interest to his son, *Michael Jacobs.*

In 1975, George Carr, the last survivor of the four original grantees of the 1940 Lease, died.

Since 1961, Burton Jacobs, Jr. and other Plaintiffs, all of whom are members of the Jacobs family, have used the hunting camp continuously as a hunting camp. They have never paid any rent and are not required to under the 1940 Lease. They have paid property taxes to the Town of Newark on the camp structure. Since 1971, Arthur Jacobs has received and paid the property tax bill and settled with the other Plaintiffs for their share. They have occasionally used the property as a location for other family events, such as a birthday party, but their essential use of the property has continued as a hunting and fishing and sporting camp. They use a spring that is approximately 200-250 feet from the camp, and they maintain an outhouse 60-70 feet from the camp. They have never changed the use or engaged in any of the activities that would have terminated an interest in the property under the 1940 Lease. They have never sought, obtained, or received permission from anyone in connection with their use of the camp.

In 1997, Lawrence Moffatt, the father of Defendant Michael Moffatt, bought the surrounding and underlying property. He was a successor in title to James Howard. He was a logger who owned 1100 acres of land. After acquiring the property, he discovered the existence of the hunting camp and the basis of the Jacobses' claim to the camp. He contacted an attorney and tried to get them to leave. In 1998, his son Michael Moffatt built his residence on other unrelated land that is 1000 feet from the hunting camp. He does not want the Jacobses to continue to use the camp.

In 2003, Lawrence Moffatt's attorney notified the Jacobses that they were trespassing. An attorney for the Jacobses responded that they claimed their interest under the 1940 Lease. In the fall of 2003 and winter of 2004, the Moffatts did extensive logging of the surrounding land, and logged to within 20 feet of the camp. The Jacobses cleaned up after the logging work was finished within the area they had traditionally used around the camp.

In 2004, Michael Moffatt acquired ownership of what was previously his father's land by Executor's deed from his father's estate. On March 25, 2010, his attorney wrote to Arthur Jacobs notifying him that any permission to use the hunting camp and related property was terminated and that Mr. Moffatt did not consider that the Jacobses held any valid interest in the property.

When the Jacobses did not stop using the property, Mr. Moffatt called the Vermont State Police on a day when members of the Jacobs family were at the camp. When the police arrived, the Jacobses, including Burton Jacobs, Jr. (assignee under the 1961 Assignment) showed them

the documents under which they claimed their interest, specifically the 1940 Lease and the 1961 Assignment. The police determined that the dispute over property interests would need to be resolved in the civil court.

Plaintiffs filed this case in January of 2011, seeking a declaration of their interest. Defendant counterclaimed for a declaration of sole ownership and ejectment.

Conclusions of Law

In his Decision of August 31, 2012, Judge Gerety analyzed the terms of the 1940 Lease and determined that it did not create a tenancy at will. This Court adopts the same reasoning and analysis as set forth in that Decision, and concludes that the 1940 Lease did not create a tenancy at will.

Defendant now argues that the original four grantees acquired only a life interest in the hunting camp, and that it terminated in 1975 at the death of the last grantee, George Carr. They argue that any interest acquired in the 1961 Assignment expired at the time of the death of George Carr, and that any use after the date of his death was under a tenancy at will, which was terminated by Defendant by his March 25, 2010 letter.

Plaintiffs have argued that Plaintiffs acquired full ownership interest in the camp and related half-acre by adverse possession under color of title (and a prescriptive easement in the access right of way) beginning in 1961 and ripening in 1975, or alternatively beginning in 1975 (on the death of George Carr, when the last life interest would have ended) and ripening in 1990. They have argued alternatively that they acquired (a) full ownership without conditions, (b) a perpetual lease, or (c) a fee simple defeasible.

"The intention of the parties, as gathered from the instrument taken as a whole, is to govern**.**" *Bove's Ex'r v. Bove*, 116 Vt. 76, 90 (1950) 116 Vt. 76, 89 (1950). The 1940 instrument identifies itself as an "indenture" and a "lease." In both indentures and leases, both parties have obligations to each other, as opposed to deeds in which it is only the grantor who binds himself. See the definition of "Indenture" in BLACK'S LAW DICTIONARY 911 (4th ed. 1968).[1] The 1940 Lease states that James Howard "hath let & doth hereby lease & demise. . .," all words signifying lease relationships. It states that it was given for consideration; it does not call for periodic payments; and by its terms it could last indefinitely. It specifically states that if the property is not used as a sporting camp, "then this lease shall be null & void," indicating a termination of a lease rather than a right of reverter or reentry. These terms express an intention to create a lease, as opposed to a conveyance of a fee interest.

Perpetual leases are recognized under Vermont law. *See, e.g.*, *Univ. of Vt. and State Agric. Coll. v. Ward*, 104 Vt. 239, 247 (1932) (recognizing perpetual leases in public lands in

---

[1] The same definition is in the 1910 2nd edition. Thus, it can be presumed that it is also in the 1933 3rd edition, which is the one that would have been current at the time of the 1940 Lease.

4

which the grantors had no authority to grant fee interests).[2]  In fact, 32 V.S.A. § 3610 specifically provides for the taxation of perpetual leases.  *See* 32 V.S.A. § 3610.  That statute also provides that a perpetual lease can exist "whether or not the instrument of lease contains restrictions on the use of the subject land by the person designated as lessee and whether or not the subject land may be repossessed by the owner because of nonpayment of rent or of other default under the instrument of lease."  32 V.S.A. § 3610(a).  Here, the 1940 Lease created a leasehold interest to last until such time as the property was no longer used as a sporting camp.  This condition is consistent with the definition of a perpetual lease based on the language of 32 V.S.A. § 3610(a).

Accordingly, the Court concludes that the 1940 Lease instrument created a perpetual lease, and not a life interest limited to the four grantees.  The grantees had the right to assign their interests in the lease, which they did in the 1961 Assignment.

Even if the Court were to construe the instrument as creating only a life interest in the original grantees, Plaintiffs have established a perpetual lease interest in the property by adverse possession.  In 1975, George Carr, the last of the four original grantees, died.  At that point, even if the Lease were to be interpreted as granting a life estate for the lives of the original grantees, suggesting that Plaintiffs had no legal right to use the hunting camp starting in 1975, the fifteen-year time period to establish adverse possession began to run.  *See* 12 V.S.A. § 501.

"To achieve title through adverse possession, a claimant must show that use of the land was open, notorious, hostile and continuous throughout the statutory period of fifteen years." *First Congregation Church of Enosburg v. Manley*, 2008 VT 9, ¶ 13, 183 Vt. 574 (internal quotation omitted).  "Where there is color of title, it is relatively simple to ascertain the extent of the possession claimed, since actual and exclusive occupation of any part of the deeded premises carries with it constructive possession of the whole."  *Cmty. Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 156 (1989).  In this case, the 1940 Lease leased the camp to the four grantees as long as they used it for a sporting camp.  When the last grantee died in 1975, Plaintiffs continued to use the property according to the terms of the 1940 Lease in reliance on its terms.  Therefore, in 1990, Plaintiffs had completed the fifteen-year time period required to establish adverse possession.

Plaintiffs also satisfied the elements necessary to establish adverse possession during the period.  First, since 1961, Plaintiffs have used the camp continuously as a hunting camp.  *See Darling v. Ennis*, 138 Vt. 311, 313 (1980) (continuous use of a hunting camp sufficient for adverse possession; constant use not required).  Second, they have never hidden their activities at the hunting camp.  *See Jarvis v. Gillespie*, 155 Vt. 633, 641 (1991) (explaining that "[a]cts of possession are deemed sufficiently open and notorious if they are conducted in a manner which would put a person of ordinary prudence on notice of the claim.").  And, third, if Plaintiffs' legal right to the hunting camp ended in 1975, their use after that time conflicted with the rights of the underlying owner.  *See Percival v. Fletcher*, 121 Vt. 291, 296 (1959) (stating that "possession

---

[2] The Supreme Court has extended the law regarding "perpetual leases" to include leases that have time limits.  In *Weyerhaeuser Co. v. Town of Hancock*, the Supreme Court determined that a "999-year lease… was one 'substantially in perpetuity' within the meaning of § 3610(a)."  151 Vt. 279, 281 (1989).  It also rejected the plaintiff's argument that, under Vermont law, a perpetual lease can only be "one lasting 'without limitation as to time.'"  *Id.*

[by an adverse possessor] must be unequivocal and incompatible with possession and use by the dominant owner.").

Accordingly, regardless of whether the 1940 Lease created a perpetual lease or a life interest to the hunting camp to the original four grantees, Plaintiffs now have a perpetual lease to the hunting camp subject to the condition established by the 1940 Lease.

**Order**

Plaintiff's counsel shall prepare a Declaratory Judgment consistent with these Findings of Fact and Conclusions of Law. Defendant's counsel shall have five days to object to the form.

Dated at Saint Johnsbury, Vermont, this 28th day of February, 2014.

_____
Mary Miles Teachout
Superior Court Judge